POWERS v. STANDARD OIL CO.

1. EVIDENCE.—Letter heads, bill heads, &c., used by a corporation are admissible evidence to show that such corporation employed a servant.

2. EXCEPTION.—OBJECTION must be made to testimony when offered for the purpose of basing an exception.

3. EVIDENCE—RECORDS.—The party producing and proving a record may introduce only such parts as he desires.

4. NONSUIT—APPLIANCES—MASTER AND SERVANT.—To prevent a nonsuit in this case, it was only necessary to introduce some testimony tending to show that the master operated and conducted the business in which the defective plankway was used.

5. JURY—MASTER AND SERVANT—MACHINERY AND APPLIANCES—CONTRIBUTORY NEGLIGENCE.—Whether a servant is guilty of contributory negligence by remaining in the service of the master after knowledge of defects in the machinery or appliances, is a question for the jury.

6. IBID.—IBID.—IBID.—WAIVER.—The jury must determine whether a servant has waived a patent defect in appliances by remaining in the employ of the master after notice of the defect.

7. WAIVER—MASTER AND SERVANT—APPLIANCES.—A promise by master to repair defect in appliances tends to rebut waiver thereof by servant, by remaining in service of master.

Before KLUGH, J., Richland, November, 1897.   Affirmed.

Action by Jerome W. Powers *v.* Standard Oil Co., for damages for personal injury.   From judgment for plaintiff defendant appeals.

*Messrs. Mordecai & Gadsden,* for appellant, cite: *Nonsuit should have been granted on account of admissions of plaintiff:* 21 S. C., 542.

*Messrs. P. H. Nelson* and *Wm. D. Melton,* contra, cite: *First exception too general:* 30 S. C., 167; 43 S. C., 99; 48 S. C., 321, 431; 49 S. C., 357.   *Nonsuit will not be granted when there is any evidence tending to prove plaintiff's case:* 50 S. C., 556.   *Failure to provide safe and suitable appliances is negligence on part of master:* 18 S. C., 262, 281; 34 S. C., 216.   *Whether servant is guilty of contributory negligence by remaining in employ of master after notice of defect, is question for jury:* 18 S. C., 277; 48 S. C., 384. *Other authorities treating continuance with knowledge as evidence of contributory negligence are:* 128 U. S., 91; 123 U. S., 710; 100 U. S., 213; 81 Ala., 200; 85 Ala., 264; 91 Ala., 442; 68 Ga., 699; 116 Ill., 100; 162 Ill., 459; 31 Kan., 761; 20 S. W., 704; 42 La. Ann., 623; 42 La. Ann., 983; 75 Md., 464; 8 Allen, 441; 110 Mass., 240; 20 Mich., 105; 40 Mich., 420; 20 Minn., 9; 72 Miss., 873; 92 Mo., 447; 30 S. W., 125; 16 Mont., 484; 16 Neb., 578; 132 N. Y., 228; 73 N. Y., 585; 97 N. C., 66; 53 Ohio St., 43; 40 Ohio St., 148; 10 Utah, 470; 84 Va., 167; 9 Wash., 500; 38 W. Va., 273.

Oct. 18, 1898.   The opinion of the Court was delivered by

MR. JUSTICE JONES.   This appeal is from a judgment on verdict against the defendant for damages for personal injuries alleged to have been sustained by plaintiff, while in the defendant's employ, by reason of defendant's negligence in keeping an unsafe elevated plankway, along which plaintiff was required to walk in the discharge of his duty as employee, which plankway, being rotten, gave way under

plaintiff, causing him to fall some distance to the ground, resulting in the injuries complained of.

The first exception complains of error in admitting in evidence the tickets, letter heads, bill heads, postal cards, &c., marked exhibits "A and B." These cards, bill heads, &c., were stamped "Standard Oil Company (of Kentucky)." One of the issues raised was whether the Standard Oil Company of Kentucky, defendant, or the Standard Oil Company of New Jersey, employed the plaintiff, the defendant company contending that it had not employed plaintiff. The plaintiff had testified that he was employed by the defendant, and to show that defendant was conducting the business at Columbia, S. C., where plaintiff was working and was injured, after showing that such or similar cards and bill heads, &c., were used in the conduct of the business in which plaintiff was employed, offered the same in evidence. We think the evidence was competent, being relevant to show who was carrying on the business in which such papers were used. But even if this were not true, appellant could not complain of the evidence, because the record does not disclose that it objected to the introduction of these papers at the time they were introduced. The record does show that, after the papers were all received in evidence without objection, appellant's counsel asked, "Does your Honor rule them competent?" To which the Court replied: "Yes, sir. I think they have been sufficiently proved to be offered in evidence for whatever they are worth." If this could possibly be construed as an objection to the testimony, it came too late, since the evidence had already been received without objection. This is not merely technical; it is a salutary rule which requires an objection to testimony before it is received, in order to base an exception for error.

The second exception assigns error in holding that plaintiff could introduce part of a record from the office of the secretary of state; whereas, he should have held that the entire record must be put in evidence. The record referred

to was under the act of 1893, declaring the terms on which foreign corporations may carry on business in South Carolina, and consisted of (1) a written declaration designating some place within this State as the principal place of business or place of location of said corporation in this State, at which all legal papers may be served upon any officer or agent found thereon; (2) copies of its charter and by-laws; and (3) a sworn statement showing the residence and post office address of such corporation, the amount of capital stock, and the names, residences, and post office addresses of its president, secretary, and directors. The paper introduced and received in evidence was the sworn statement last mentioned, purporting to be that of the Standard Oil Company (of Kentucky). It is common and approved practice in this State, on proof and production of a record consisting of several papers, to introduce in evidence such part thereof as may be deemed relevant to the matter in issue. The part introduced can prove only what it purports to prove on its face; and when a part of a record has been introduced by one party, the whole may be introduced by the other party, if he desires. The exception before us does not go to the proof of the record, or its competency and relevancy as a whole, but merely complains that a part was introduced, instead of the whole. We find no error in the ruling complained of.

The third, fourth, and fifth exceptions allege error in not granting the motion for nonsuit, in that no competent testimony had been introduced tending to establish that the defendant company employed plaintiff, or that the planks which were alleged to be rotten and unsound were the property of the defendant. The plaintiff expressly testified, that at the time he received the injury he was working for the Standard Oil Company of Kentucky; and, as already referred to in considering the first exception, evidence was introduced tending to show that the defendant was conducting the business, in the prosecution of which, as employee, plaintiff was injured. It was

not necessary to prove that defendant was *owner* of the planks, the unsound condition of which it was alleged caused the injury. It was sufficient, to prevent a nonsuit, to offer some evidence tending to show that defendant was operating and conducting the business in which the plankway was provided for the use of its servants in its employment. There was no error in refusing the nonsuit on these grounds.

The sixth exception alleges error in not granting the nonsuit on the ground that plaintiff testified that he knew of the patent defect in the planks, and that he voluntarily assumed the risk. The testimony touching this matter referred to by appellant is as follows: Q. Did you notice the rotten condition of that plank that morning? A. Had been noticing it every morning. Q. Did you state to Mr. Mundy you would give up your job rather than go across that plank? A. No, sir. Q. You knew it was rotten? A. I knew it was in bad condition. Q. You took the risk when you went on it? A. I had to do it; it was necessity with me. Q. Why? A. Bread and meat. Q. You would have lost your job if you had refused to go on it? A. Yes, sir. The plaintiff also testified that on July 1, previous to the day he received the injury, which was July 26, he had called the attention of the manager to the fact that the plankway was dangerous, and that the manager promised to have it fixed; that he crossed the plankway every day until the 26th of July, and that on that day he thought it would carry his weight. In reference to the motion for nonsuit on this ground, the Circuit Judge ruled that "contributory negligence is a matter for the jury." The answer of the defendant set up the defense of contributory negligence. The testimony of the plaintiff did not admit or so clearly establish the plaintiff's defense as to render a nonsuit proper, under the rule stated in *Pool* v. *R. R.*, 23 S. C., 288, and *Slater* v. *R. R.*, 29 S. C., 100. The ruling of the Circuit Court is sustained by the cases of *Lasure* v. *Graniteville Mfg. Co.*, 18 S. C., 281; *Parker* v. *R. R.*, 48 S. C., 384;

*Farley* v. *Veneer Co.*, 51 S. C., 222, where the rule is stated that it is a question for the jury to determine whether a servant is guilty of contributory negligence because he remains in the service of his master after he has knowledge of defects in the machinery or appliances with which he is furnished to work.

The seventh exception complains that the Circuit Judge, in his ruling above, ignored the distinction between contributory negligence and the voluntary assumption of risk by the plaintiff, and that he erred in not passing upon the question as to assumption of risks by plaintiff, in not nonsuiting plaintiff on the evidence submitted on that point. Whether plaintiff voluntarily assumed the risk after knowledge of the defect was, like the matter of contributory negligence, a question for the jury, unless the evidence by plaintiff is so clearly one way as not to admit of any other construction than that the plaintiff did assume the risk after knowledge of the defect. As stated in *Hooper* v. *R. R.*, 21 S. C., 547, "an employee may waive the right to exact of his employer, such appliances as the law in its strictness might require; and, as a general rule, the acceptance of service, or remaining in the service without complaint, after full knowledge of a permanent, patent defect, amounts to such waiver as to that particular defect." In this case the Circuit Judge could not say that plaintiff's evidence established such a waiver so clearly as not to admit of a contrary view. There was evidence, as stated, that defendant, through its manager, had been notified of the defective plankway, and had promised to repair it. A promise by the master to remedy a defect tends to rebut the inference of waiver of the defect by the servant's remaining in the master's service after knowledge. If the servant continued in discharge of his duties, relying on the master's promise to remove a defect, he could not be said to have waived such defect. The jury was the proper tribunal to determine this question in this case.

The judgment of the Circuit Court is affirmed.