## McGOVERN, ADMINISTRATRIX, *v.* PHILADEL-
## PHIA & READING RAILWAY COMPANY.

### ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR
### THE EASTERN DISTRICT OF PENNSYLVANIA.

No. 430.   Argued November 30, 1914.—Decided December 14, 1914.

Where appellants, plaintiffs below, had a verdict on the first trial which
was set aside on motion for new trial on which the District Court dis-
cussed questions arising under treaties and ruled adversely to plain-
tiffs, and on the second trial the court ruled adversely to plain-
tiffs under the Federal statute, this court will presume that the
court also considered the treaty questions, and a direct appeal will
lie to this court based on the construction and application of the
· treaty.

In deciding *Maiorano* v. *Baltimore & Ohio Railroad Co.,* 213 U. S.
268, which came here on writ of error from the state court, this court
simply accepted the ruling of the state court that a non-resident alien
could not maintain an action for death of a relative under the state
statute, as being the construction by the highest court of the State of
that statute.

After reviewing the rulings of many jurisdictions in regard to the right
of non-resident aliens to maintain actions for death of relatives under
statutes giving the right, *held* that the weight of authority in this
country and in England is that alienage is not a condition affecting
right of recovery under the Federal Employers' Liability Act.

*Quære,* whether under the favored nation provision in the existing treaty
with Great Britain and the express provision in the treaty with Italy
permitting Italian aliens, non-resident in the United States, to main-
tain actions in the courts of the United States and of the States, a
citizen of Great Britain has a treaty right to maintain an action for
the death of a relation under the Federal Employers' Liability Acts
of 1908 and 1910.

In this case, *held,* that in view of the conflict of evidence as to the cir-
cumstances under which the intestate was killed, the question of
assumption of risk was properly presented to the jury.

Where there has been a verdict for plaintiff and it has been set aside on
the ground that plaintiff has not capacity to sue, and on the second

trial a verdict directed for defendant on that ground, the Circuit Court of Appeals cannot reverse and direct judgment on the original verdict even if the plaintiff waives a jury trial; the case must be sent back for new trial.

Judgment based on 209 Fed. Rep. 975, reversed.

THE facts, which involve the construction of the Federal Employers' Liability Acts of 1908 and 1910, and the right of non-resident aliens to maintain actions thereunder, and also questions involving rights under the favored nation clause of the treaty with Great Britain, are stated in the opinion.

*Mr. George Demming* for plaintiff in error:

This court has jurisdiction. *Nichols Lumber Co.* v. *Franson*, 203 U. S. 278; *Giles* v. *Harris*, 189 U. S. 475; *Williamson* v. *United States*, 207 U. S. 425.

Non-resident aliens can benefit under the provisions of the Act of Congress of April 22, 1908. See *Maiorano* v. *Balt. & Ohio R. R.*, 213 U. S. 268; affirming 216 Pa. St. 402; and see *Deni* v. *Penna. R. R.*, 181 Pa. St. 525; *Balt. & Ohio R. R.* v. *Baldwin*, 144 Fed. Rep. 53; *Brannigan* v. *Union Mining Co.*, 93 Fed. Rep. 164; *Zeiger* v. *Penna. R. R.*, 151 Fed. Rep. 348; *S. C.*, 158 Fed. Rep. 809; *Roberts* v. *Great Northern Ry.*, 161 Fed. Rep. 239; *Fulco* v. *Schuylkill Stone Co.*, 163 Fed. Rep. 124.

*Maiorano* v. *Balt. & Ohio R. R.*, 213 U. S. 268, distinguished, as since that decision there has been a new treaty with Italy, of February 25, 1913, and Pennsylvania has passed an act permitting non-resident aliens to recover in Pennsylvania in like cases.

Under the terms of the treaties between the United States and foreign countries, especially with Italy and with Great Britain, plaintiff in error can recover.

Because of the most favored nation clause the terms of the treaty with Italy would be held to apply to subjects of Great Britain and Ireland.

If a new rule of law was promulgated by the new treaty with Italy it went back and covered all cases, which, though originating before, nevertheless had not been tried and decided up to that time.

Treaties are construed with regard to the intention as well as with reference to justice and convenience. *The Amistad*, 15 Pet. 518, 591, 595; *United States* v. *Texas*, 162 U. S. 1; *Tucker* v. *Alexandroff*, 183 U. S. 424.

A treaty is to be construed in the light of all the facts and circumstances surrounding its making. *In re Ross*, 140 U. S. 453; *United States* v. *Schooner* "*Peggy*," 1 Cranch, 103.

Even ignoring the treaties between the United States and Italy and the doctrine of the most favored nation clause, plaintiff in error has the right to bring the present suit and to recover therein by reason of direct treaty rights and provisions between the United States and Great Britain and Ireland. See Arts. II and V of the treaty of March 2, 1899, with Great Britain.

A treaty is the supreme law of the land, binding alike national and state courts, and is capable of enforcement, and must be enforced by them in the litigation of private rights. *Chew Heong* v. *United States*, 112 U. S. 536; *Tucker* v. *Alexandroff*, 183 U. S. 424.

A treaty should be liberally construed, *De Geofrey* v. *Riggs*, 133 U. S. 258, and if it admits of two constructions the more liberal one is to be preferred. *Hauenstein* v. *Lynham*, 100 U. S. 483; 2 Herod on Favored Nation Treatment, p. 9; Hall's Int. Law, pp. 350–355 (4th Ed.). See also *Chambers* v. *Balt. & Ohio R. R.*, 207 U. S. 142, 150; *Maiorano* v. *Balt. & Ohio R. R. Co.*, *supra*.

Within the broad intent of this treaty such a right of action for the death is the personal property of the heirs. As to what is property see *Sinking Fund Cases*, 99 U. S. 700, 738; *Seaman* v. *Clarke*, 69 N. Y. Supp. 1002; *Power* v. *Harlow*, 57 Michigan, 107, 111; *Battishell* v. *Humphreys*,

64 Michigan, 494; *Smith* v. *Stage Co.*, 28 How. Prac. (N. Y.) 277; William's Personal Property, 16th ed., 144; Schouler, Personal Property, 3d ed., §§ 11–15, 58; 32 Cyc. 669.

This is plain, no matter what theory of the origin of the suit for death by negligence is accepted. *Mich. Cent. R. R.* v. *Vreeland*, 227 U. S. 59, 67.

While in this country rights of foreigners to real estate and immovable property rest primarily in the laws of the State where such . property is situated, *Hauenstein* v. *Lynham*, 100 U. S. 483; *Blythe* v. *Hinckley*, 180 U. S. 333, this law does not apply to personal estate, but aliens have full power and right in this country to succeed thereto. *McLearn* v. *McClellan*, 10 Pet. 625, 637.

By international law and the law of comity and reciprocity between nations this plaintiff should be allowed to recover.

International law is undoubtedly part of the law of this land.  2 Butler's Treaty-making Power, 187, 223; *Love* v. *United States*, 29 Ct. of Cl. 332; *Ekiu* v. *United States*, 142 U. S. 651; *McEwan* v. *Zimmer*, 38 Michigan, 765; *Hilton* v. *Guyot*, 159 U. S. 113; *Paquette Habana*, 175 U. S. 677; *Bank* v. *Earle*, 13 Pet. 519, 589; Story's Con. Laws, § 618.

Such is the rule in Great Britain, under Employers' Liability Act of England, enacted in 1880, Lord Campbell's Act of 1846, and the "Fatal Accidents Act," although the acts themselves are silent on this point. Ruegg's Employers' Liability, 7th ed., 148; *Davidson* v. *Hill*, 2 K. B. (1901) 606; Elliott, Workmen's Compensation, 6th ed., 311; *Baird* v. *Savage*, 43 Scot. Law Rep. 300 (1906); *Krzus* v. *Crow's Nest Coal Co.*, Law Rep. App. Cas. 1912, 590.

If the statute meant otherwise, it should have said so in plain words.  See 6 Butterworth's Workmen's Compensation, 271; *Davidson* v. *Hill*, 70 L. J., K. B., 1901, 788;

*Varesick* v. *British Columbia Copper Co.*, 12 B. C. 286, 1906.

By the laws of international reciprocity and comity this country is bound to extend the same rights and benefits, under our own laws, to British subjects.

This is not any new or strange doctrine. *United States* v. *O'Keefe*, 11 Wall. 178, 183.

Under the plain reading of the state statute itself plaintiff in error can recover. Endlich, Inter. Stat., § 4.

Where the language of an act is so clear and explicit as not to be open to construction, its construction cannot be changed by the practice of the departments, however long continued. *United States* v. *Graham*, 110 U. S. 219; *Thornley* v. *United States*, 113 U. S. 310.

A statute must be held to mean what the language imports. When it is clear and imperative, reasoning *ab inconvenienti* is of no avail, and there is no room for construction. *The Cherokee Tobacco*, 11 Wall. 616; *United States* v. *Temple*, 105 U. S. 97; *Lake County* v. *Rollins*, 130 U. S. 662; *Bate Refrigerating Co.* v. *Sulzberger*, 157 U. S. 1.

So universally has this come to be regarded as the true rule of interpretation, that where the legislatures of the individual States have passed compensation acts and have decided that where non-resident aliens are excluded from the benefits of the Act a provision to that effect has been inserted. See Workmen's Compensation Act New Jersey, 1911, ch. 95, § 12; Act of Washington, 1911, ch. 74, § 3; New Hampshire Act, 1911, ch. 163, § 6.

For specific provisions in regard to aliens, see Wisconsin Act, 1911, ch. 50, § 10, par. 5; and see *McMillan* v. *Spider Lake Mill Co.*, 115 Wisconsin, 332; Michigan Act, 1912, No. 3, § 7.

The New York Act, ch. 816, 1913, § 17, makes its provisions applicable to non-resident aliens.

The acts of other States appear to be silent on the subject. Bradbury's Workmen's Compensation.

The California Act 1911, ch. 399, has been construed by the board to include in its benefits non-resident aliens. See Boyd's Workmen's Compensation, § 263.

In all other States, where this question has arisen, and where the statutes are silent on the point of the relatives who shall recover for a negligent death, it appears to have been held in respective state courts that, by the plain reading of the statute itself, non-resident aliens are necessarily included among those entitled to the remedies and benefits of the statute. See *Kellyville Coal Co.* v. *Petraytis*, 195 Illinois, 215; *Mulhall* v. *Fallon*, 176 Massachusetts, 266; *Vetaloro* v. *Perkins*, 101 Fed. Rep. (Mass.) 393; *Szymanski* v. *Blumenthal*, 3 Pennewill (Del.), 558; *Renlund* v. *Commodore Co.*, 89 Minnesota, 41; *Bouthron* v. *Phœnix Fuel Co.*, 8 Arizona, 129; *Romano* v. *Capital City Brick Co.*, 125 Iowa, 591; *Cleveland & St. L. R. R.* v. *Osgood*, 36 Ind. App. 34; *Pocohontas Collieries* v. *Rukas*, 104 Virginia, 278; *Alfson* v. *Bush*, 182 N. Y. 393; *Pittsburgh & St. L. Ry.* v. *Naylor*, 73 Oh. St. 115; *Jeffersonville Co.* v. *Hendricks*, 41 Indiana, 48, 71; *Luke* v. *Calhoun County*, 52 Alabama, 115; *Philpott* v. *Mo. Pac. Ry.*, 85 Missouri, 164; *Chesapeake &c. Ry.* v. *Higgins*, 85 Tennessee, 620; *Augusta Ry.* v. *Glover*, 92 Georgia, 132, 142; *Trotta* v. *Johnson*, 121 Kentucky, 827; *Atchison &c. Ry.* v. *Fajardo*, 74 Kansas, 314. For similar construction of analogous statutes, see also *Davidson* v. *Hill*, 2 K. B. (1901) 606; disapproving *Adams* v. *British & F. S. S. Co.*, 2 Q. B. (1898) 430; *Patek* v. *American Smelting Co.*, 154 Fed. Rep. 190; *Cetofonte* v. *Camden Coke Co.*, 78 N. J. 662; Thornton's Federal Employers' Liability Acts, 176; Boyd, Workmen's Compensation, § 500; *Low Wah Suey* v. *Backus*, 225 U. S. 460, 476; *Dennich* v. *Railroad Co.*, 103 U. S. 11, 17.

The general and accepted policy of this country is to extend to foreigners exactly the same means of redress, as is enjoyed by our own citizens. Wharton on Conflict of Laws, §§ 17, 478, 478a, 483, 705, 737, 743.

And see similar rule in Canada. *Varesick* v. *British Columbia Copper Co., supra;* Op. of Att. Gen., 1855, 7, 229. And see *Breedlove* v. *Nicolet,* 7 Pet. 413, 431.

The transitory character of an action for a tort is well recognized, and the action is enforced wherever the defendant can be found, irrespective of the residence of the beneficial plaintiff. Wharton, Confl. Laws, §§ 478a, 480a; *Gardner* v. *Thomas,* 14 Johnson (N. Y.), 134; *Dewitt* v. *Buchanan,* 54 Barb. (N. Y.) 31; *Crashley* v. *Press Pub. Co.,* 179 N. Y. 27, 71; *Slater* v. *Mexican Natl. R. R.,* 194 U. S. 120, 129; *Barrow S. S. Co.* v. *Kane,* 170 U. S. 100, 112.

In the courts of the United States, under the Constitution and laws, alien friends irrespective of treaty stipulations are entitled to the same protection of their rights as citizens. *Taylor* v. *Carpenter,* 3 Story, 458, 463. And see 1 Ops. Att. Gen. 192; 12 *id.* 319; *Stewart* v. *Balt. & Ohio R. R.,* 168 U. S. 445; *Mich. Cent. R. R.* v. *Vreeland, supra; American R. R.* v. *Birch,* 224 U. S. 547; *Taylor, Admr.,* v. *Taylor,* 232 U. S. 363; *Fong Yue Ting* v. *United States,* 149 U. S. 698, 754.

There was no material fact at issue and a new trial was not necessary; and the case should have been in a position immediately for a writ of error without the additional expense and delay of a new trial. The Circuit Court of Appeals should have reinstated the judgment of the District Court. *Barney* v. *Schmeider,* 9 Wall. 248; *Hodges* v. *Easton,* 106 U. S. 408; *Baylis* v. *Travelers' Ins. Co.,* 113 U. S. 316.

In this case *Slocum* v. *New York Life Ins. Co.,* 228 U. S. 364, does not apply. And see Schofield in Vol. VIII, Illinois Law Rev., December, 1913, January and February, 1914, numbers, pages 294, 295, 307, 308, 390, 391, 399.

*Mr. William Clarke Mason,* with whom *Mr. Charles Heebner* was on the brief, for defendant in error:

The trial judge was correct in affirming the defendant's point, to the effect that plaintiffs, being non-resident aliens, had no right of action under the Act of Congress of April 22, 1908, etc.

The record justified the action of the trial judge in directing the jury that "Under all the evidence the verdict should be for the defendant," for two reasons:

The deceased employé assumed the risk of his employment.

The non-resident alien plaintiffs were not dependent upon the deceased employé for maintenance and support.

The case may not have been properly brought before this court by the direct writ of error.

In support of these contentions see, *Adam* v. *British & F. S. S. Co.*, 2 Q. B. 430; *Aerkfetz* v. *Humphreys*, 145 U. S. 418; *American Railroad Co.* v. *Didricksen*, 227 U. S. 145; *Crowe* v. *Railroad Co.*, 70 Hun, 37; *Connelly* v. *Penna. Railroad Co.*, 201 Fed. Rep. 54; *Colorado Mining Co.* v. *Turk*, 150 U. S. 138; *Davis* v. *Concordia Parrish*, 9 How. 280; *Davidson* v. *Hill*, 2 K. B. 606; *Farrugia* v. *Phila. & Reading Ry.*, 233 U. S. 352; *Filhiol* v. *Maurice*, 185 U. S. 108; *Gillman* v. *Philadelphia*, 3 Wall. 713; *Pollard* v. *Kibbe*, 9 How. 471; *Gulf &c. Ry. Co.* v. *McGinnis*, 228 U. S. 173; *Hertz* v. *Woodman*, 218 U. S. 205; *Hijo* v. *United States*, 194 U. S. 315; *Jecker* v. *Magee*, 9 Wall. 32; *Maiorano* v. *Balt. & Ohio R. R.*, 213 U. S. 268; *Mich. Cent. R. R.* v. *Vreeland*, 227 U. S. 59; *Muse* v. *Arlington Hotel Co.*, 168 U. S. 430; *Nye* v. *Penna. R. R. Co.*, 178 Pa. St. 134; *Norfolk & W. R. Co.* v. *Gesswine*, 144 Fed. Rep. 56; *Peterson* v. *Am. Ice Co.*, 83 N. J. L. 579; *Seaboard Air Line* v. *Horton*, 233 U. S. 492; *Southern Railway* v. *Crockett*, 234 U. S. 725; *Sloan* v. *United States*, 193 U. S. 614; *Stephens* v. *Cherokee Nation*, 174 U. S 445; *Sanchez* v. *United States*, 216 U. S. 167; *Thomas* v. *Gay*, 169 U. S. 264; *Winfree* v. *Nor. Pac. Ry.*, 227 U. S. 296.

MR. JUSTICE MCKENNA delivered the opinion of the court.

Action in trespass under the Railroad Employers' Liability Act of Congress of April 22, 1908, c. 149, 35 Stat. 65, as amended April 5, 1910, c. 143, 36 Stat. 291, brought against the railway company, which, it is alleged, caused by negligence the death of Peter McGovern, one of its employés. Plaintiff was duly appointed administratrix of the estate of McGovern and brought the action in behalf of his surviving parents, who are citizens of Great Britain and Ireland.

McGovern was not married, was twenty-four years old, and was in the habit of making regular contributions to the support of his parents. The facts of the killing are not now in dispute, the principal question in the case being whether under the act of Congress an action can be maintained for the benefit of non-resident aliens.

There were two trials of the action. At the first trial plaintiff obtained a verdict. On motion of the railway company, the court, being of opinion that the action could not be maintained for the benefit of non-resident aliens, granted a new trial. 209 Fed. Rep. 975. On the second trial the railway company submitted to the court for its affirmance the following propositions, among others: (1) The parents of McGovern, being non-resident aliens, have no right under the act of Congress for which the action might be maintained and, therefore, a verdict should be directed in favor of the company. (2) Under all of the evidence in the case a verdict should be for the company. The court affirmed the propositions and directed a verdict for the company. The jury returned a verdict accordingly, and judgment was duly entered for the railway company. This writ of error was then sued out.

It is suggested rather than urged that the case is not properly here on direct appeal. But the right of direct

appeal is based on the ground, among others, that the construction and application of the treaty between the United States and Great Britain and Ireland are involved in the case, the favored-nation clause of which give the residents and citizens of Great Britain and Ireland the same rights as those of Italy, and that by a treaty between the latter and the United States its citizens are entitled to exactly the same rights as citizens of this country in the courts of this country, although the citizens of Italy may be residing abroad.

In its first opinion in the case the District Court discussed at length the question arising upon the treaty and held adversely to plaintiff. We must presume, therefore, that the court considered the treaties as elements in its decision upon the right of McGovern to recover for the benefit of the parents of the deceased. This court, therefore, has jurisdiction.

We need not, however, discuss the treaties. The view we take of the statute makes such course unnecessary. But see *Maiorano* v. *Balt. & Ohio R. R.*, *infra*.

Section 1 of the Act of Congress of 1908 provides that every common carrier by railroad, while engaged in interstate commerce, "shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employé, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employé; and, if none, then of such employé's parents . . . ." the carrier or its agents being negligent or its instrumentalities being defective due to its negligence. *Seaboard Air Line* v. *Horton*, 233 U. S. 492, 501.

In ruling upon the statute the District Court considered that the reasoning in *Deni* v. *Penna. R. R.*, 181 Pa. St. 525, and in *Maiorano* v. *Baltimore & Ohio R. R.*, 213 U. S. 268, applied. In the *Deni Case* the Supreme Court of Penn-

sylvania, passing upon a statute of the State which permitted certain named relatives to recover damages for death occurring through negligence, held that the statute had no extra-territorial force and that plaintiff in the action was not within its purview, though its language possibly admitted of the inclusion of non-resident aliens. The *Maiorano Case* came to this court on writ of error to the Supreme Court of Pennsylvania, where the doctrine of the *Deni Case* was repeated and applied. This ruling was simply accepted by this court as the construction of the state statute by the highest court of the State.

We concede some strength of persuasion to the Pennsylvania decision but to it may be opposed the ruling in other jurisdictions. *Mulhall* v. *Fallon*, 176 Massachusetts, 266; *Kellyville Coal Co.* v. *Petraytis*, 195 Illinois, 217; *Atchison, Topeka & Santa Fe Ry.* v. *Mateo Fajardo et ux.*, 74 Kansas, 314. In the latter case and in *Mulhall* v. *Fallon* many other cases are reviewed, including English and Canadian cases, and it was concluded that the weight of authority in this country and in England was that alienage is not a condition affecting a recovery under acts such as that involved in the case at bar.

In *Patek* v. *American Smelting Company*, 154 Fed. Rep. 190, the Circuit Court of Appeals for the Eighth Circuit, passed on a statute of Colorado which gave a right of action for wrongful death to persons standing in certain relation to one whose death was caused by the wrongful act of another. The court, after considering the policy of the act, as manifested in the legislation, and reviewing the cases under other statutes of like character, said (p. 194): "We think that the better reason, as also the greater weight of adjudged cases, forbids that non-resident aliens be excluded, by interpretation, from among the beneficiaries designated in the statute."

We may refer to these cases for their reasoning without reproducing it, and need not do much more than add that

the policy of the Employers' Liability Act accords with and finds expression in the universality of its language. Its purpose is something more than to give compensation for the negligence of railroad companies. Even if that were its only object we might accept the distinction expressed in *Mulhall* v. *Fallon, supra,* between the duties imposed by a statute upon persons in another State and benefits conferred upon them. Extra-territorial application would naturally not be given to the first, "but rights can be offered to such persons, and if, as is usually the case, the power that governs them makes no objection, there is nothing to hinder their accepting what is offered." *Mulhall* v. *Fallon, supra* (p. 268).

The rights and remedies of the statute are the means of executing its policy. If this "puts burdens on our own citizens for the benefit of non-resident aliens," as said by the District Court, quoting the *Deni Case, supra,* it is a burden imposed for wrongdoing that has caused the destruction of life. It is to the prevention of this that the statute is directed. It is for the protection of that life that compensation for its destruction is given and to those who have relation to it. These may be wife, children or parents. The statute, indeed, distinguishes between them, but what difference can it make where they may reside? It is the fact of their relation to the life destroyed that is the circumstance to be considered, whether we consider the injury received by them or the influence of that relation upon the life destroyed.

It is, however, contended by the railway company that the deceased McGovern assumed the risk of his employment. This is attempted to be supported by the facts in the case. The testimony of plaintiff tended to show the following facts: McGovern was killed by a train bound from New York to Philadelphia while he was engaged in cleaning snow from the tracks of the railway company when there were mist, smoke and occasional flurries of

snow.  At the place where the men were working were four main lines of trackage.  Shortly after nine o'clock the men were warned off what was called track No. 4 by a call of the foreman to "look out" or "heads up," in order to let a local train pass by.

McGovern and two others were working on track No. 2. There was no call to them, the practice of the foreman being to designate the track in his warning, the men on the other track continuing to work.  The foreman testified that he did not see the New York train "because it was a bad morning, snowing, and the Norristown train was a little bit slack, and there was steam and smoke and snow in front of the New York train."  The New York train gave no signal and no warning was given of it.  It was testified that the watchman had got his feet wet and had gone to change his shoes.  And it was also in testimony that the Norristown train was slow and the New York train came fast and that while the men were attracted by the first the other rushed down upon them.

There was testimony by the railway company that the engine whistled.  One witness called it a "wicked whistle," and there was also testimony that the men and McGovern directly were warned that they were working in a dangerous place and to be careful.

There was testimony that the watchman was not absent and that it was his duty to notify the workmen of approaching trains; that the company, besides, have subforemen to direct the workmen; that the men are "told to be careful" and to watch for themselves "and depend upon the sub-foreman, of course.  .  .  .  No man should continue working if he sees a train coming."  It further appeared that the place where the accident occurred was regarded as a dangerous place, the tracks being in frequent use.

It is hence contended by the railway company that McGovern assumed the risk of the situation and that, there-

fore, it was error for the District Court to refuse to give an instruction which presented that contention.

We have given the testimony in general outline, but enough to show that what conflict there was in it was for the jury to judge of and what deductions there were to be made from it were for the jury to make. And the District Court, being of this view, refused to charge the jury, as we have seen, that McGovern had assumed the risk of the situation. We cannot say that as a matter of law the court was mistaken. We see no error, therefore, in its ruling.

Plaintiff in error contends that the District Court should not have ordered a new trial because she offered to waive her rights to a trial by jury. This was not error.

*Judgment reversed and cause remanded for new trial.*