9209

LORICK v. SEABOARD AIR LINE RAILWAY.

(86 S. E. 675.)

1. COMMERCE — RAILROAD — REPAIR OF DEFECTIVE CAR. — An injury received by a car repairer, while raising a fallen drawhead to standard height during the temporary stoppage of the car for that purpose while in interstate transit, falls within the Federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. 1913, secs. 8657-8665]), regulating the liability of interstate carriers to employees.

2. RAILROADS — REPAIR OF DEFECTIVE CARS — MASTER AND SERVANT — ASSUMPTION OF RISK — NONSUIT. — Whether a servant engaged in repairing a defective coupler on a car in transit between interstate points, when such repairs were necessary before the car could be forwarded under the Federal Safety Appliance Act (36 Stats. at L. 298,

ch. 160, Comp. Stats. 1918, sec. 8617), sec. 4, assumed the risk incident to the master's failure to furnish suitable appliances for the work, by remaining in such employment after requesting such appliances and the master's promise to furnish same, especially where there was a conflict of testimony, was a question for the jury, and a nonsuit on the ground that the servant assumed such risk was error.

Before MEMMINGER, J., Lexington, February, 1915. Reversed.

Action by J. H. Lorick against Seaboard Air Line Railway brought under the Federal Employers' Liability Act for an injury sustained by him while engaged in repairing a coupler to a car which had become out of repair, in transit from some point on the line of the Seaboard Air Line Railway to a point without the State of South Carolina.

The car was being repaired by reason of the fact that a connecting road, to which it had been tendered, had refused to receive it until repairs were made.

The testimony tended to show that the plaintiff, a car inspector, was not provided with a jack, which was necessary to make the repairs he was required to make, and that he had on several occasions complained to his superior officers, agents of the Seaboard Air Line Railway, that he should be provided with such appliance, and the promise had been made to him, the last time, about three weeks before the accident, that a jack would be furnished him.

Not having the necessary appliance, the only way in which he could raise this coupler was to use his shoulder and press it up, and, in doing so, he sustained an injury for which the action was brought.

FOOTNOTE.—As to assumption of risks under Federal Employers' Liability Act, see notes in 36 A. & E. Ann. Cas. 1915b, 481, 47 L. R. A. (N. S.) 62, 55 L. R. A. (N. S.) 1915c, 69. Assumption of risk in undertaking to lift heavy object, see note in 17 A. & E. Ann. Cas. 241, 25 L. R. A. (N. S.) 362. Promise by master to furnish additional safety appliance or instrumentality as relieving servant from assumption of risk, see note in 17 A. & E. Ann. Cas. 896, 25 L. R. A. (N. S.) 1179, and opinion on second appeal in *S. A. L. Ry.* v. *Horton,* 36 Sup. Ct. R. 180.

At the close of plaintiff's evidence, the defendant moved for a nonsuit on the ground that the plaintiff had assumed the risk of the work and that there was no compulsion for him to do this work at that time.

From order granting the nonsuit, plaintiff appeals.

*Messrs. Frank G. Tompkins* and *Geo. Bell Timmerman,* for appellant, cite: Safety Appliance Act of April 14, 1910; 36 Stats. 298, ch. 260, Comp. Stats. 1913, sec. 8617, sec. 4; 237 U. S. 402; 222 U. S. 19; 232 U. S. 246; 55 S. C. 101; 53 S. C. 363; 61 S. C. 478; 75 S. C. 390; 72 S. C. 346; 94 S. C. 154; 98 S. C. 53; 99 S. C. 404; 233 S. C. 504.

*Messrs. Lyles & Lyles* and *C. M. Efird,* for respondent, cite: 78 S. C. 478; 86 S. C. 69.

October 14, 1915.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

The exception raises but one point, and that is that the presiding Judge erred in granting the *nonsuit,* when the evidence showed facts that should have been submitted to the jury for their determination. It is conceded by both sides that the plaintiff brought his case under the Federal Employers' Liability Act, as it was shown clearly by the evidence that the car was to be taken from one State to another State, and was engaged in interstate commerce at the time plaintiff was making repairs on it. This being the case, the Federal Safety Appliance Act also applies (36 Stat. at L. 298, chap. 160, Compiled Stats. 1913, sec. 8617). Section 4 of this act, known as the act of 1893 (act of March 2, 1893, 27 Stats. 531), as amended in 1903 and 1910 (act April 14, 1910, c. 160, 36 Stats. 299, U. S. Comp. St. 1913, sec. 8621), is as follows: "That any common carrier subject to this act using, hauling, or permitting to be used or hauled on its line, any car subject to the requirements of this act not

equipped as provided in this act, shall be liable to a penalty of one hundred dollars for each and every such violation, to be recovered as provided in section six of the act of March 2, 1893, as amended April 1, 1896: *Provided,* That where any car shall have been properly equipped, as provided in this act and the other acts mentioned herein, and such equipment shall have become defective or insecure while such car was being used by such carrier upon its line of railroad, such car may be hauled from the place where such equipment was first discovered to be defective or insecure to the nearest available point where such car can be repaired, without liability for the penalties imposed by section 4 of this act or section 6 of the act of March 2, 1893, as amended by the acts of April 1, 1896, if such movement is necessary to make such repairs, and such repairs can not be made except at such repair point; and such movement of hauling of such car shall be at the sole risk of the carrier, and nothing in this section shall be construed to relieve such carrier from liability in any remedial action for the death or injury of any railroad employee caused to such employee by reason of or in connection with the movement or hauling of such car with equipment which is defective or insecure or which is not maintained in accordance with the requirements of this act and the other acts herein referred to; and nothing in this proviso shall be construed to permit the hauling of defective cars by means of chains instead of drawbars, in revenue trains or in association with other cars that are commercially used, unless such defective cars contain live stock or 'perishable' freight."

The provision of this section applicable to the question has been construed by the opinion of the Supreme Court of the United States in the case of *United States* v. *Erie Railroad Company,* 237 U. S. 402, 35 Sup. Ct. Reporter 621, where the following language is used: "The hauling of the cars with defective equipment was clearly in contravention of the statute. While section 4 of the act of 1910 permits

such cars to be hauled without liability for the statutory penalty, from the place where the defects are discovered to the nearest available point for making repairs, it distinctly excludes from this permission all cars which can be repaired at the place where they are found to be defective, and also declares that nothing therein shall be construed to permit the hauling of defective cars by means of chains instead of drawbars in association with other cars in commercial use, unless the defective cars 'contain live stock or perishable freight.'   Six of the cars that were hauled while their equipment was defective could have been readily repaired at the place where the defects were discovered, which was before the hauling began.   The remaining two were hauled by means of chains instead of drawbars in association with other cars in commercial use, and it is not claimed that they contained live stock or perishable freight."

This act applies to all trains of cars engaged in interstate commerce and all vehicles in connection therewith.   *Southern Railway Company* v. *United States,* 222 U. S. 20, 55 Law Ed. 72, 32 Sup. Ct. Reporter 2.   The evidence in this case shows that the defendant was engaged in transferring the defective car in question from one State to another, and comes within the meaning of the Federal Employers' Liability Act of April 22, 1908.

It is the settled law of this State, that the servant asumes the ordinary risk incident to his labor, but he does not assume such risks as may be caused by the master negligently failing to furnish suitable appliances to perform his work, but if the servant continues in the service with knowledge of such defective appliances he is deemed to have waived the master's negligence, and to have assumed the risk in spite of the master's negligence; but if he complains of, and calls attention to the defect, and there is a promise on the part of the master to furnish such suitable appliances as it is his duty to do, and the employee, while remaining thereafter in the master's service is injured,

it is a question for the jury to determine whether the employee, by remaining in the master's service, assumes such risk.

"The remaining in master's service by an employee, after knowledge of an alleged defect in the instrumentalities to be furnished by the master, is not, as a matter of law, an assumption of risk by the employee. Whether the employee assumed the risk, is a question for the jury, to be determined from all the circumstances of the case." *Mew* v. *Railroad Company,* 55 S. C. 101, 32 S. E. 828. "A promise by the master to remedy a defect tends to rebut the inference of waiver of the defect by the servant's remaining in the master's service after knowledge. If the servant continued in discharge of his duties, relying on the master's promise to remove the defect, he could not be said to have waived such defect. The jury was the tribunal to determine this question in this case." *Powers* v. *Oil Company,* 53 S. C. 363, 31 S. E. 276. As to the same principle, see *Bodie* v. *Railway Company,* 61 S. C. 478, 39 S. E. 715; *McCarley* v. *Manufacturing Company,* 75 S. C. 390, 56 S. E. 1; *Hankinson* v. *Railroad Company,* 94 S. C. 154, 77 S. E. 863.

The law of assumption of risk as settled by the Supreme Court of United States in *Seaboard Air Line Railway* v. *Horton,* 233 U. S. 504, 34 Sup. Ct. Reporter 635, 58 Law Ed. 1070, 55 L. R. A. (N. S.) 1915c, 1, 36 A. &. E. Ann. Cas. 1915b, 475, is as follows: "* * * Such dangers as are normally and necessarily incident to the occupation are presumably taken into the account in fixing the rate of wages. And a workman of mature years is taken to assume risks of this sort, whether he is actually aware of them or not. But risks of another sort, not naturally incident to the occupation, may arise out of the failure of the employer to exercise due care with respect to providing a safe place of work and suitable and safe appliances for the work. These the employee is not treated as assuming until he becomes aware of the defect or disrepair and of the risk arising from

it, unless defect and risk alike are so obvious that an ordi-
narily prudent person under the circumstances would have
observed and appreciated them.    These distinctions have
been recognized and applied in numerous decisions of this
Court.    (Here the Court cites number of cases.)  * * *

"When the employee does know of the defect, and appre-
ciates the risk that is attributable to it, then if he continues
in the employment without objection, or without obtaining
from the employer or his representative an assurance that
the defect will be remedied, the employee assumes the risk,
even though it arise out of the master's breach of duty.    If,
however, there be a promise of reparation, then during such
time as may be reasonably required for its performance, or
until the particular time specified for its performance, the
employee, relying upon the promise, does not assume the
risk unless at least the danger be so imminent that no ordi-
narily prudent man under the circumstances would rely upon
such promise."    (Here the Court cites number of cases.)

It has also been held where there is a conflict of testimony
as to the assumption of risk, it is a question to be decided by
the jury. ·

This has always been the law of this State, and so, also,
determined by the Supreme Court of United States in
*Bridgett McGovern* v. *Philadelphia and Reading Railway.
Company,* 235 U. S. 389, 35 Sup. Ct. R. 127.    So neither
under the State law, nor under the Federal law, could this
issue be determined without submission to the jury.    His
Honor was in error in granting the *nonsuit,* and the order
of *nonsuit* must be set aside and reversed.

Reversed.


MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES
HYDRICK and GAGE concur in the opinion of the Court.


MR. JUSTICE FRASER, *dissenting.*    I dissent.    I think the
evidence shows that the plaintiff injured himself.