14520

## STOGNER v. GREAT ATLANTIC & PACIFIC TEA CO.

(192 S. E., 406)

May, 1936.

*Messrs. Willcox, Hardee & Wallace,* for appellant, cite:

*Messrs. McEachin & Townsend,* for respondent, cite:

July 27, 1937.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

The plaintiff brought this action for the recovery of damages for alleged personal injuries (a hernia), claimed to have been suffered by him while employed as the manager of the defendant's store in Hartsville, S. C., on June 22, 1934.

The complaint alleges:

"That on or about June 22, 1934, the plaintiff, in the course of his employment as salesman in the defendant company's Hartsville store, was lifting a front quarter of beef, weighing about one hundred and fifty (150) pounds, from the scales into the meat box of the said store, a distance of about six feet; that after he had entered the said meat box and had proceeded about midway, the boards and joists of the floor of the meat box, due to their rotten condition, broke under the plaintiff's feet, causing him to sink into the sawdust packing, throwing the plaintiff off his balance and against the shelving of the meat box, and finally casting him to the floor, where the quarter of beef fell on him and the shank bone was thrust into his side so suddenly and violently as to cause a dangerous rupture."

The chief specification of negligence upon which the decision of this appeal depends is that the defendant failed to properly inspect and maintain the meat box or large refrigerator in its store, so as to prevent the rotting through and· undermining of a floor joist and floor board therein; and in assuring the plaintiff that the said floor would be repaired, and that it would be safe for the plaintiff to use it, although the defendant knew of the dangerous condition thereof.

The defendant's answer is a general denial and contains pleas of assumption of risk, and contributory negligence.

The trial resulted in a verdict for the plaintiff, and the defendant appeals to this Court from the refusal of the

county Judge to grant its motions for a nonsuit and for a directed verdict.

Error is predicated upon the ground that all the testimony in the case shows that the plaintiff fully appreciated any danger incident to the use of the ice box, with the floor in the condition which he admittedly knew it was in, for a period of three months prior to his injury, and that his acts and conduct under the circumstances as shown by the testimony amounted to an assumption of the risk of the dangers incident to working under the conditions which existed, and to contributory negligence, as a matter of law.

The respondent, at the time of his injury, was twenty-eight years of age, and had been working for the defendant for about eight years, and was experienced in the handling of meat and in the conduct of a grocery store. Part of the equipment in the store consisted of an ice box about 6 feet wide, 10 feet long, and 7 feet high, in which were stored meat and other products sold by the defendant. The floor of the ice box was constructed of boards 1½ inches wide, running lengthwise, which were laid upon and supported by floor joists, spaced about 24 inches to 30 inches apart. The respondent testified that the only practicable way to carry a fore quarter of beef was to clasp it in his arms, and in this manner move it from the scales in the store to a hook in the ice box, where it would be hung; that this was the usual and customary method used in carrying and handling the beef, and when so doing it was difficult to see ahead.

He also testified that a floor board near the center of the ice box was decayed from a drip of water falling from the overhead ceiling; that it appeared to him that it would break through, and that it should be repaired; and that for this reason he reported this condition to Mr. Jackson, the appellant's assistant superintendent, who visited the store for the purpose of inspection and supervision two or three times a week; that he as manager of the store had no authority to make or authorize any repairs; that when any such

work was necessary on any equipment or on the building, it was his duty to report it to Mr. Jackson. According to the plaintiff, he first made this report to the assistant superintendent about three months prior to the accident, and again two weeks preceding its date; and it was brought out on cross-examination from the respondent that he reached the conclusion that if he placed his foot at the point of decay the board would likely break through, and would probably cause injury. But he further testified upon direct and cross examination that the superintendent promised to have the apparently rotten board repaired, and assured him that it was safe to continue to use it, and that he relied upon Mr. Jackson's assurance that it was safe.

The plaintiff was constantly in and out of the ice box each day in connection with the conduct of the defendant's business, and testified that while carrying the fore shoulder of beef, in the manner described, his foot went through the rotten flooring at a point where the ends of two floor boards met and were fastened to the floor joist, causing him to be injured in the manner alleged in the complaint. That not only did this particular floor board break through, but that the joist upon which it was nailed was rotten, and broke through. That while he appreciated the fact that the board at that point was decayed, he had no knowledge that the joist beneath it was rotten and unsafe.

There is a sharp conflict of testimony upon all the material points in issue: The defendant's theory being—and it is supported by evidence—that the plaintiff suffered his injury when lifting the beef from the scales before he ever reached the ice box; and that the injury occurred in this manner two weeks prior to the time he claims that it occurred. That no report of the defective flooring was made to the superintendent by the plaintiff until about one month after the alleged injury, when he reported that the floor of the ice box was getting in bad condition. Mr. Jackson testified that the flooring was, normally, covered with sawdust to a

depth of about ½ inch, and that when the matter was thus brought to his attention, he removed the sawdust and discovered that the surface of the board in question had gotten a little soft, where water dripped on it from the ceiling of the ice box. He stated: "I jumped on to the board—in fact, I jumped to see if it would break through with me, and I said it is solid, just nail a strip over it." (Mr. Jackson weighed about 245 pounds at that time.)

It has frequently been stated, and with good reason, that assumption of risk and contributory negligence are so closely allied that it is sometimes difficult to draw the true line of distinction. *Hall v. Northwestern R. Co., 81 S. C., 522, 62 S. E., 848*; in a broad sense assumption of risk shades into contributory negligence, the difference being one of degree rather than kind. *Hice v. Dobson Lumber Company, 180 S. C., 259, 185 S. E., 742*; *Montgomery v. Seaboard Air Line R. Co., 73 S. C., 503, 53 S. E., 987*; *Barksdale v. Charleston & W. C. R. Co., 66 S. C., 204, 44 S. E., 743*. It is also generally declared that the point where the two concepts approximate is where the danger is so obvious and imminent that no one of ordinary prudence would encounter it.

While the doctrine of assumption of risk rests upon contract, and contributory negligence rests in tort *(Hall v. Northwestern R. Co., supra)*, we think that we may safely, under the evidence, in discussing these two defenses interposed by the appellant, treat them as one.

We have held in numerous cases dealing with the subject of master and servant, that where the servant has actual knowledge of the dangers to which the service exposed him, or where the defects or dangers are so manifest and glaring that in the exercise of ordinary care, in the performance of the services for which he was employed, he should have known of their existence, he assumes the risk of injury incident to their existence. *Kirkland v. Southern R. Co., 128 S. C., 47, 121 S. E., 594*; *Baldwin v.*

*Piedmont Mfg. Co.,* 102 S. C., 402, 86 S. E., 379; *Wofford v. Clinton Cotton Mills,* 72 S. C., 346, 51 S. E., 918; *Har-Well v. Columbia Mills,* 112 S. C., 177, 98 S. E., 324.

But the servant, by reason of his knowledge of one defect or danger, does not take the risk of another of which he has no knowledge; and if both contribute to the injury, he is entitled to recover, if the accident would not have happened but for the unknown defect. 39 C. J., Master and Servant, § 943. Neither does the servant assume the risk of injury by continuing in the employment for a reasonable time, where the master or his representative promises to remedy the defect, unless the danger is so patent that no person of ordinary prudence would have continued to work. *Powers v. Standard Oil Co.,* 53 S. C., 358, 31 S. E., 276.

The respondent frankly stated that he appreciated the fact that the board which he considered rotten was unsafe, but that he was entirely ignorant of the fact that the floor joist upon which it rested was decayed. And he testified that the board broke with his weight because of the rotten joist underneath.

We have held that the servant is under no obligation to examine appliances and places of work for the purpose of discovering latent defects or dangers, not open to ordinary observation. *Nelson v. Atlantic, G. & P. Co.,* 107 S. C., 1, 92 S. E., 194; *Dover v. Lockhart Mills,* 86 S. C., 229, 68 S. E., 525; *Evans v. Chamberlain,* 40 S. C., 104, 18 S. E., 213; *Anderson v. Conway Lumber Company,* 99 S. C., 100, 82 S. E., 984. And this is especially true where the servant has received assurances of safety from the master, or his representative.

The appellant argues that this case resolves itself down to the question as to whether or not the plaintiff should be excused for his own heedlessness and carelessness by any promise on the part of the master or representative. If the decision in this case depended solely upon the liability of the defendant due to its alleged negligence

with reference to the rotten floor board, we would be strongly inclined, under the evidence in this case, to say that the lower Court erred in refusing the motion for a directed verdict, but this is not the sole point in the case. The testimony for the plaintiff tends to show that the floor joist upon which this board rested was decayed, and that the injury was occasioned by its rotten condition, and that it would not have happened, but for the unknown defect. This was a hidden defect which the plaintiff could not see, and as to which he could not assume the risk; nor could it be said as a matter of law that he was contributorily negligent in stepping on it. In so far as the board itself is concerned, according to the plaintiff's evidence, he was told by his superior that it was safe to use it. It certainly cannot be said as a matter of law that the rotten condition of the concealed joist was obvious, or that any danger could reasonably have been apprehended therefrom.

The facts in the cases of *Hice v. Dobson Lumber Co., supra,* and *Adcox v. Campbell Limestone Co. et al.,* 182 S. C., 106, 188 S. E., 657, are not analogous. In those two cases the instrumentality which caused the injury to the plaintiff was not concealed, but was open and obvious.

In the light of the facts and on the principles of law which we have discussed, we are unable to say that the plaintiff assumed the risk of his injury, or was guilty of contributory negligence, as a matter of law. The issues made by the testimony were jury questions, and were properly submitted to the jury.

The exceptions are overruled, and the judgment of the lower Court affirmed.

Mr. Chief Justice Stabler and Messrs. Justices Bonham and Baker concur.

Mr. Justice Carter did not participate on account of illness.