14617

SMITH v. EDWARDS

(195 S. E., 236)

April, 1937.

*Messrs. Joe P. Lane* and *H. M. Britt,* for appellant,

*Messrs. P. H. McEachin* and *W. C. Moore,* for respondent,

February 9, 1938.

The opinion of the Court was delivered by Mr. Justice Bonham.

The appellant brings this action, under Code 1932, § 412, Lord Campbell's Act, as administratrix of the estate of her daughter, Margaret Smith, to recover damages for the death of her intestate, which, she alleges, was caused by the negligence, willfulness, and gross negligence of the defendant, her agent and servant.

It appears that the defendant owned an establishment of the modern pattern known as a beauty shop, situated in the Town of Latta, S. C., which was operated by Miss Edith Gainey, now Mrs. Vareen, as the employee and agent of the defendant. To this shop, Margaret Smith, a minor, and

without the knowledge of her mother, repaired and engaged Miss Gainey to give her a "permanent wave," which term denotes the treatment of the scalp and arrangement of the hair of the client in a particular way. The complaint alleges that because of the negligence and inefficiency of the operator, Miss Gainey, Margaret Smith suffered burns which produced abscesses on the head and other parts of her body, from the effects of which she died.

The answer sets up a general denial, assumption of risk, and contributory negligence, it being alleged that Margaret Smith was a sufferer from the disease known as diabetes; that the effect of such disease is to render the sufferer therefrom especially susceptible to danger of infection and harmful consequences from any injury which produces an abrasion of the skin or flesh.

The case was tried by Judge Grimball and a jury, and the verdict was for the defendant.

The plaintiff appeals upon a number of exceptions, all of which we do not find it necessary to consider seriatim.

The Judge charged the jury that a person receiving a permanent wave "assumed any risk ordinarily incident thereto." The exception (No. 2) is that "one receiving a permanent ant knew of the danger, or defect, and assumed the risk. wave does not assume any risk ordinarily incident thereto unless that one is aware of the fact that there is danger; one does not assume an unknown risk, or danger of which one has no knowledge, or reason to expect. Further, the assumption of risk is not applicable to this case."

The character of cases in which the issue of assumption of risk arises, and which are best known to the Courts and the profession, are those between master and servant, in which the master is sued for the result of his alleged negligence, against which he defends with the plea that the servant knew of the danger, or defect, and assumed the risk. In the present case it is alleged by way of defense that Margaret Smith, the employer, assumed the risk of having the operator of the beauty shop give her a permanent wave.

The appellant alleges that the doctrine of assumption of risk is not applicable to this case, but we are not in accord with that view. The operating of "beauty shops," with its incident of giving "permanent waves," is a new occupation, or profession, and the action of Courts in relation thereto upon questions of negligence, liability therefor, and defenses against, including assumption of risk, are not recorded in many cases. But we venture to assert, as a matter of reason and common sense, that the doctrine that an employer may be guilty of assumption of risk is sound. If one employs a driver to take him over a dangerous, precipitous mountain road, the dangers of which he appreciates, he assumes the risk, of course not as against the negligence of the operator of the vehicle, but the driver is not an assurer of the safety of his passenger against dangers known and appreciated by his passenger.

The reports abound with cases arising between master and servant in which the master interposes the defense of assumption of risk; but there are in our own reports no case in direct analogy with the issue here made. But there are some brief references in other jurisdictions and in textbooks which we think point the way in elucidation of this question.

7 Corpus Juris Secundum, Assumption, page 137, has this to say:

"Assumption of risk. The term usually applies to the relation of master and servant, but may apply to other relations. * * * It has been said that while the term technically connotes a consequence of contract, Courts have sometimes used this term interchangeably with phrases such as 'taking the risk' or 'incurring the risk,' and that the thought behind these phrases, as thus used, has frequently been indicated in the law by the maxim *volenti non fit injuria*.' The term presupposes some danger, a knowledge thereof, a reasonable opportunity to ascertain the nature of the risk, and ordinarily implies appreciation thereof, and acquiescence therein; and has been defined as the acquiescence of an or-

dinarily prudent man in a known danger, the risk of which he assumes by contract."

We copy the following excerpt from 45 C. J., 1043, under the caption "Assumption of Risk":

"Even the doctrine of assumption of risk, as usually applied, is not applicable because of the absence of any contractual relation between the parties, nevertheless, when plaintiff has brought himself within the operation of the maxim, *volenti non fit injuria,* he cannot recover. In some jurisdictions it has been held that one who voluntarily exposes himself or his property to a known and appreciated danger due to the negligence of another may not recover for injuries sustained thereby, even though he was in the exercise of ordinary care. This has been referred to as the doctrine of 'incurred risk,' 'taking the risk or hazard,' or 'running the risk' incident to a known and appreciated danger, and is said to rest upon, or be, in its nature, effect, and import, the equivalent at least, of the principle expressed by the maxim, *volenti non fit injuria.* This doctrine is to be distinguished from the doctrine of contributory negligence because applicable even though the person injured was in the exercise of ordinary care. It has also been distinguished from the doctrine of assumed risk, in the generally accepted use of that term, by the fact that it is operative independently of any contractual relation between the person injured and the person responsible for the dangerous condition or instrumentality; but other Courts, while recognizing that the doctrine of assumption of risk in its primary meaning can apply only when a contractual relation exists, have asserted that it may extend beyond contractual relations, and is the doctrine upon which the rule under consideration rests."

Since we have no case in our own reports dealing with this question, we may with some degree of propriety have recourse to the opinions of other Courts of equal rank with ours. Such a case is that of *Edna Reed v. Belle Rosenthal*

*et al.,* an *Oregon case* reported in 129 Or., 203, 276 P., 684, 63 A. L. R., 1071. Syllabus 1 of the reported case is in these words: "A patron of a beauty parlor cannot be said to have assumed the risk of infection in undergoing a facial treatment, where there is nothing to show that she had any reason to anticipate any risk or danger."

In the annotation to this case, 63 A. L. R., 1074, this is found: "In the few cases that can be found where a barber or beauty parlor proprietor was sued for injury to a patron their liability for negligent injury is undisputed.  *  *  * In several cases the doctrine of assumption of risk was advanced but in none of them did it prove successful. Before this doctrine can be applied there must be evidence that the patron was aware of the dangerous character of a preparation or appliance used." *Citing Barnett v. Roberts,* 243 Mass., 233, 137 N. E., 353.

We think that appellant went, perhaps, further than was intended when she said that the doctrine of assumption of risk did not apply in this case. We think it applies to any case of similar nature, where the facts proved show that the person against whom the doctrine of assumption of risk is pleaded knew of the danger, appreciated it, and acquiesced therein. And we think, therefore, that it is applicable to this case under the proof. Is there any evidence that Margaret Smith knew of the danger which she incurred when she applied for a permanent wave? There is no question that she knew that she had diabetes; she was in the habit of taking insulin. But there is no syllable of testimony that she knew that because of the nature of this disease from which she suffered that if she suffered a burn or any other injury which caused an abrasion of the skin or flesh, she was especially liable to infection.

In other words, did she know of the danger which it is charged she assumed? Did she acquiesce in the assumption? There is no particle of proof that she knew of it, and assumed it and acquiesced in it.

The Judge charged the law in the abstract and correct way, as it pertains to applicable cases. Was the charge sufficiently applicable here?

The jury were charged to discover whether the plaintiff's intestate assumed the risk of going to the beauty parlor for a permanent wave. How were they to determine that question? Under the instructions of the Court on the subject of assumption of risk as it applied to the case before them, they were entitled to a clear and full instruction on the doctrine. Did they get it? We think not. It was the duty of the Court to tell them that before the plaintiff's intestate could be charged with having assumed the risk of having the permanent wave given, it was necessary that it be shown not only that she knew that she was suffering from diabetes, but that she also knew that if in the act of receiving the permanent wave she suffered an injury which would make an abrasion of the scalp or skin, she might receive an infection which would be materially harmful to her because of the fact that the disease from which she suffered rendered her peculiarly susceptible to such danger. There is not a particle of proof that Margaret Smith knew of this established medical principle. How then can she be held to have acquiesced in it? How could the jury hold her liable to its precept, unless they were informed that she must know of it, acquiesce in it before she was liable?

They were not so instructed. If it may be argued that if plaintiff's attorneys desired more explicit instruction along this line, they should have asked for it; the sufficient answer is this:

After the Judge had charged defendant's seventh request in these words: "A person receiving a permanent wave assumes the risk ordinarily incident thereto," and as he was concluding his general charge, the defendant's counsel asked: "Did you intend not to charge on the plea of assumption of risk?" To which his Honor answered: "I charged that a person receiving a permanent wave assumes any risk ordinarily

incident thereto. That was your number eight and I charged your number seven, also."

Evidently defendant's counsel considered that the doctrine of assumption of risk had not been fully charged and explained to the jury. Hence, their question. In the light of the answer thereto, it will hardly be held error that plaintiff's counsel did not ask for further instruction thereabout.

The exceptions deal largely with the Judge's charge on the subject of contributory negligence on the part of Margaret Smith. The appellant alleges that issue was not tendered by the plea of the answer. A cursory review of the answer shows that this position is not tenable.

In our judgment the law pertaining to the plea of contributory negligence was clearly and correctly charged in the abstract; but we think it should have been coupled with the admonition to the jury that unless the plaintiff's intestate knew that her condition as a diabetic made her peculiarly liable to infection, if she suffered an abrasion while undergoing the operation of receiving the permanent wave, and knowingly assumed the risk of such infection, she could hardly be held to have contributed to an injury of which she had no reason to apprehend danger. She could not be held to be guilty of negligence in not protecting herself from a danger of which she had no knowledge, in so far as the evidence shows. The jury was entitled to be instructed thereabout.

For the reasons given, the judgment is reversed and the case is remanded for a new trial.

We think it inadvisable to discuss other issues made by the exceptions.

MR. CHIEF JUSTICE STABLER concurs.

MESSRS. JUSTICES BAKER and FISHBURNE concur in result.

MR. JUSTICE CARTER did not participate on account of illness.