## 17541

T. W. COOPER, Appellant, v. W. R. MAYES, Respondent

(109 S. E. (2d) 12)

C. M. *Edmunds,* of Sumter, *for Appellant,*

*Messrs. Nash & Wilson* and *Weinberg & Weinberg,* of Sumter, *for Respondent,*

June 8, 1959.

LEGGE, Justice.

Respondent, a farmer, also operated a cotton gin and warehouse in the town of Mayesville. In September, 1957, he employed appellant, an electrician of some 25 years' experience, to install a new lighting system around the gin and the warehouse. While cutting the old wires, appellant was seriously injured as the result of electric shock. He brought this action for damages, alleging that his injury had been caused by respondent's negligence in lulling him into a sense of security by telling him that these old wires had not been used for many years and carried no current. Respondent pleaded assumption of risk and contributory negligence. The appeal is from an order of nonsuit.

Appellant offered no witness other than himself. The following appears from his testimony:

There were several poles in the warehouse lot carrying old wires, and on them were lights for the purpose of illumiating the gin yard. On the pole nearest the warehouse (referred to as pole No. 1), there was a switch box; from there one or more of the old lines ran to pole No. 2, thence to pole No. 3, and from there one ran to a small outbuilding referred to as the "bath house". A master switch, controlling the current in all of the old wires, was located in the warehouse, which was 150 or 200 feet from pole No. 3. The old lines consisted of two wires for 110 volts each and a third, neutral, wire. The accident occurred on a Tuesday morning, shortly after a rain. Mr. Cooper was standing on top of an aluminum ladder, which he had leaned against

pole No. 3. The pole was wet. Mr. Cooper was holding, with his left hand, a porcelain bracket at the top of the pole; with a wire-cutter in his right hand he was cutting the line that ran from the pole to the "bath house". The two wires intended for carrying current were cut without incident; as he was in the act of cutting the "neutral" wire the current struck him. Unable to release himself otherwise, he jumped away from the ladder, and his weight pulled him free, so that he fell to the ground some 20 feet below.

A week or so before the accident, Mr. Mayes was having trouble with his old wires; whenever the switch was thrown on at pole No. 1, sparking and flashing resulted; fuses would blow; he needed lights because he was loading cotton at night. He sent for Mr. Cooper, the electrician, who "by-passed" the switch, thus allowing the current to go into the old lines beyond that pole. Mr. Mayes was able to load cotton that night; but the trouble started again, following a storm, and the fuses kept blowing out. Of all this Mr. Cooper knew when he came back on the morning of the accident to finish his work, which entailed installing new poles, new wires, and new switches completely around the gin yard, with outlets for lights on five of the poles.

Mr. Cooper testified that the old wires were in bad condition, with insulation worn away; some were wrapped together; some were down; the old poles were rotten. He had cut some of the old wires; the cutting of those leading to the bath house was not necessary for the installation of the new line; but he proceeded to cut them at the request of Mr. Mayes, who had told him that he was going to take all of the old wires down.

Mr. Cooper's only explanation for his failure to throw off the main switch, or examine the fuses, or test for current, or to take any precaution whatever against possible electric shock, was that he assumed there would be no danger because, about a week before, at the time he had "cleared" the line, Mr. Mayes had told him that the bath house had not been used for some time and that the line to it had

had no current for several years. He testified that he was familiar with the line; on the occasion of his work there about a week before the accident, he noticed the condition of the wires leading to the bath house and had told his colored helper to "clear them out" with a stick, which proved impossible because of tree branches through which the line ran. There was no evidence that current was in them then. When the accident occurred there was no current in the two wires that were designed for current, and that he had just cut; he received electric shock when he was cutting the "neutral" wire. He testified that he was unable to explain how the current got into that wire.

One of the rules of the law of master and servant is that by entering the service of his employer the employee assumes the risks ordinarily incident to the service that he has engaged to perform, and that injury resulting to him from such risks will give rise to no common-law right of recovery against the employer. The rule is not inflexible; it is subject to certain exceptions, among them that which holds it inapplicable where, there being ground for reasonable difference of opinion as to danger in the manner of performing the work, the servant has surrendered his judgment of unsafety in reliance upon the master's superior judgment. *Scott v. International Agricultural Corp.,* 180 S. C. 1, 184 S. E. 133; *Hice v. Dobson Lumber Co.,* 180 S. C. 259, 185 S. E. 742; *Cross v. Siddall,* 184 S. C. 508, 193 S. E. 124.

Assumption of risk, in its true sense, rests in contract, not tort. A true case of assumption of risk arises when an employee, without negligence on his part or that of his employer, is injured as the result of a hazard ordinarily incident to the proper performance of the duties of his employment. When by his own negligence the employee increases the hazard to which his work would normally expose him, and as the result of such negligence and not of any negligence of his employer sustains injury from the abnormal hazard which he has thus created, he is bar-

red from recovery by his own negligence. Where the extraordinary hazard is attributable to the employer's negligence, but would not have caused the injury except for the negligence of the employee, the bar to recovery is not assumption of risk, but contributory negligence. Where negligence enters into the consideration of the rights of an injured employee against his employer, the issue moves from the field of contract into that of tort. Attempt in such cases to interrelate assumption of risk and contributory negligence is more academic than practical, and sometimes loses sight of the fact that the difference between the two is fundamental and not merely of degree. See *Bodie v. Charleston & W. C. R. Co.*, 61 S. C. 468, 39 S. E. 715; *Barksdale v. Charleston & W. C. R. Co.*, 66 S. C. 204, 44 S. E. 743; *James v. Fountain Inn Mfg. Co.*, 80 S. C. 232, 61 S. E. 391; *Hall v. Northwestern R. Co. of South Carolina*, 81 S. C. 522, 62 S. E. 848; *Hice v. Dobson Lumber Co., supra; Stogner v. Great A. & P. Tea Co.*, 184 S. C. 406, 192 S. E. 406; *Whisenhunt v. Atlantic Coast Line R. Co.*, 195 S. C. 213, 10 S. E. (2d) 305.

The evidence here suggests that Mr. Cooper was an independent contractor rather than an employee. But granting that the relationship of master and servant existed, we doubt that Mr. Cooper's testimony brings his case within the aforementioned exception to the rule of assumption of risk. It does not suggest that Mr. Mayes directed him as to the manner in which he should do his work. It does not warrant the inference that Mr. Cooper, a skilled electrician employed to remove old and defective wires and to install a new lighting system, surrendered his judgment of unsafety in reliance upon the superior judgment of Mr. Mayes, whom he had known for many years as a layman, unskilled as to electricity.

Nor does it seem to us that actionable negligence on Mr. Mayes' part can be reasonably inferred from the testimony. But even assuming that he was negligent in the only particular that the testimony attempts to suggest,

*i. e.,* in stating to Mr. Cooper a week or so before the accident that the line to the bath house had been without current for years, we agree with the trial judge that Mr. Cooper's testimony conclusively shows contributory negligence. He knew the line and the tangled and defective condition of the old wires; he knew (to use his own words) that "it is dangerous to work on electric wires at any time"; he knew that since his previous visit to the premises there had been a storm, and that it had rained on the night before the accident. The master switch controlling the light lines was in the warehouse, within 200 feet of him; and he left it on. His gloves and insulated pliers were in his truck, within 30 feet of him; and he left them there. He had an instrument with which to test the wire for current; but he did not use it. He made no examination of the fuses. He leaned a highly-conductive aluminum ladder against a wet pole and climbed it, unprotected, and without having taken any precaution for his safety. Nonsuit was properly ordered.

Affirmed.

STUKES, C. J., and TAYLOR, OXNER and MOSS, JJ., concur.