508 S.E.2d 565

Alvin DAVENPORT, Respondent,

v.

**COTTON HOPE PLANTATION HORIZONTAL PROPERTY REGIME, Petitioner,**

v.

Carson Landscaping Company, Inc., Third–Party Defendant.

No. 24850.

Supreme Court of South Carolina.

Heard April 22, 1998.
Decided Nov. 9, 1998.

Russell S. Stemke of Pratt–Thomas, Pearce, Epting, & Walker, P.A., of Charleston, for Petitioner.

G. Richardson Wieters, and Mary K. Monville, of Hilton Head Island, for Respondent.

A. Parker Barnes, Jr. of Parker Barnes, & Associates, of Beaufort, for Third–Party Defendant.

Stephen P. Groves and Stephen L. Brown of Young, Clement, Rivers, & Tisdale, of Charleston, and John S. Wilkerson, III, of Turner, Padget, Graham, & Laney, P.A., of Florence, for South Carolina Defense Trial Attorney's Association.

William A. Jordan, of Greenville, for South Carolina Trial Lawyer's Association.

## ON WRIT OF CERTIORARI TO
## THE COURT OF APPEALS

TOAL, Justice:

This is a comparative negligence case arising out of an accident in which respondent, Alvin Davenport, was injured

while descending a stairway near his apartment. We granted certiorari to review the Court of Appeals' opinion in *Davenport v. Cotton Hope Plantation Horizontal Property Regime,* 325 S.C. 507, 482 S.E.2d 569 (Ct.App.1997). We affirm as modified.

### FACTUAL/PROCEDURAL BACKGROUND

Alvin Davenport is a resident of Cotton Hope Plantation located on Hilton Head Island. The plantation is organized under state law as Cotton Hope Plantation Horizontal Regime ("Cotton Hope"). Cotton Hope is composed of ninety-six condominium units located in multiple buildings. Each building consists of three levels. The buildings have three stairways each, one in the middle and two on either side. Davenport's unit is on the top level, approximately five feet from a stairway. Davenport leases his unit from the owner.

Cotton Hope employed Property Administrators, Incorporated ("PAI") to maintain the grounds at Cotton Hope Plantation. In April 1991, PAI, as Cotton Hope's agent, hired Carson Landscaping Company, Inc., ("Carson") to perform landscaping and general maintenance work at the condominiums. Carson's duties included checking the outdoor lights and changing light bulbs as needed. The contract between Cotton Hope and Carson also required Carson to indemnify Cotton Hope for any losses resulting from Carson's negligence.

In June 1991, Davenport began reporting that the floodlights at the bottom of the stairway he used were not working. Davenport testified he made several phone calls to PAI complaining about the problem. Davenport nevertheless continued to use the stairway during this time. On the evening of August 12, 1991, Davenport fell while descending the stairway closest to his apartment. Davenport testified he fell after attempting to place his foot on what appeared to be a step but was really a shadow caused by the broken floodlights. He admitted not using the handrail in the stairway.

Davenport sued Cotton Hope for his injuries. Cotton Hope, in turn, brought a third-party claim against Carson for indemnification. At the close of all the evidence, the trial court directed a verdict against Davenport, finding he had assumed

the risk of injury. The trial court also held that even if assumption of risk were abrogated by the adoption of comparative negligence, Davenport was more than fifty-percent negligent. The trial court then directed a verdict in favor of Carson on Cotton Hope's third-party claim, finding there was nothing for Carson to indemnify. Davenport and Cotton Hope appealed the trial court's ruling.

In *Davenport v. Cotton Hope Plantation Horizontal Property Regime*, 325 S.C. 507, 482 S.E.2d 569, the Court of Appeals held that assumption of risk had been subsumed by South Carolina's adoption of comparative negligence. As such, assumption of risk was no longer a complete defense to a negligence claim but, instead, was simply another factor to consider in comparing the parties' negligence. The court ruled that the relative negligence of Davenport and Cotton Hope turned on factual considerations which should have been submitted to the jury. As for Cotton Hope's cross-appeal, the court remanded the issue for jury determination. Judge Goolsby dissented, arguing assumption of risk was not subsumed by comparative negligence because assumption of risk and contributory negligence were separate and distinct concepts. In a separate opinion, Judge Stilwell concurred in Judge Goolsby's dissent.

This Court granted Cotton Hope's petition for a writ of certiorari to address the following issues:

(1) Is assumption of risk a doctrine which has, and should continue to maintain, a separate, independent, and distinct identity from contributory negligence?

(2) Can Davenport's assumption of the risk created by Cotton Hope's alleged negligence be "compared" with that negligence in apportioning liability under South Carolina's comparative negligence scheme?

(3) Can Cotton Hope's alleged negligence, based on objective standards, be merged with or compared to the subjective standards which form the basis of assumption of the risk, *i.e.* Davenport's decision to take the alleged risk?

(4) Should South Carolina adopt a policy which would allow people to volunteer to be plaintiffs by taking unnecessary risks even if created by others?

(5) Did Davenport know, understand, and appreciate the alleged risk he undertook such that he assumed the risk as a matter of law and should be barred from recovery?

(6) Did Davenport establish any duty breached by Cotton Hope?

(7) Did Davenport's negligence exceed that of Cotton Hope?

(8) Even if assumption of risk is subsumed, did the Court of Appeals err in holding that under our comparative negligence system a trial court cannot direct a verdict for the defendant?

(9) Should the trial court's directed verdict be upheld on the basis that the broken light was not the proximate cause of Davenport's injury?

(10) If it is determined that assumption of risk is subsumed by comparative negligence, should such a ruling be applied prospectively only?

## LAW/ANALYSIS

### A. ASSUMPTION OF RISK IN A COMPARATIVE FAULT SYSTEM (Issues 1–5)

The threshold question we must answer is whether assumption of risk survives as a complete bar to recovery under South Carolina's comparative negligence system. In *Nelson v. Concrete Supply Company*, 303 S.C. 243, 399 S.E.2d 783 (1991), we adopted a modified version of comparative negligence. Under this system, "[f]or all causes of action arising on or after July 1, 1991 a plaintiff in a negligence action my recover damages if his or her negligence is not greater than that of the defendant." *Nelson*, 303 S.C. at 245, 399 S.E.2d at 784. *Nelson* made clear that a plaintiff's contributory negligence would no longer bar recovery unless such negligence exceeded that of the defendant. Not so clear was what would become of the defense of assumption of risk.

South Carolina first adopted assumption of risk within the employment context.[1] *See, e.g., Hooper v. Columbia & Green-*

---

1. The modern notion of assumption of risk has its roots in the Latin maxim *volenti non fit injuria* ("to one who is willing, no harm is done") which was originally applied in Roman Law by validating the process in which a free citizen sold himself into slavery. *See* Jane P. North,

*ville R.R. Co.*, 21 S.C. 541, 547 (1884). The doctrine rested in contract and was founded upon a theory of consent whereby the servant assumed those risks of employment that he knew of or should have known about. *Stogner v. Great Atlantic & Pacific Tea Co.*, 184 S.C. 406, 192 S.E. 406 (1937).

This Court ultimately extended the defense to negligence cases outside the traditional master-servant context. *See, e.g., Smith v. Edwards*, 186 S.C. 186, 195 S.E. 236 (1938). In *Smith*, The plaintiff died as a result of burns she suffered while receiving a "permanent wave" at a beauty shop. The defendant argued that the plaintiff had diabetes which made her peculiarly susceptible to the injuries, and consequently, she assumed the risk of injury. The plaintiff argued that under these facts, assumption of risk was not available as an affirmative defense. This Court disagreed, stating, "[assumption of risk] applies to any case . . . where the facts proved show that the person against whom the doctrine of assumption of risk is pleaded knew of the danger, appreciated it, and acquiesced therein." *Smith*, 186 S.C. at 191, 195 S.E. at 238.

 Currently in South Carolina, there are four requirements to establishing the defense of assumption of risk: (1)

---

*Employees' Assumption of Risk: Real or Illusory Choice?*, 52 Tenn. L.Rev. 35 (1984); 65A C.J.S. *Negligence* § 174(1) at 287 (1966). In the nineteenth century, assumption of risk became entrenched in the English common law primarily as a result of Lord Abinger's opinion in *Priestly v. Fowler*, 3 M. & W. 1, 150 Eng.Rep. 1030 (Ex.1837). In *Priestly*, the plaintiff, a servant of the defendant, was injured after being thrown to the ground when a "van" overloaded by another servant broke down. Lord Abinger denied recovery, stating, "the plaintiff must have known as well as his master, and probably better, whether the van was sufficient, whether it was overloaded, and whether it was likely to carry him safely." 150 Eng.Rep. at 1033.

The doctrine of assumption of risk, grounded in *laissez-faire* economics, flourished during the Industrial Revolution. *See* North, 52 Tenn. L.Rev. 35. Application of the defense was based upon the social justification that employers in a rapidly industrializing society had to be free to pursue their economic goals. *Id.* at 40. In line with this philosophy, assumption of risk made its way into the American common law. *See Tuttle v. Detroit, Grand Haven & Milwaukee Ry.*, 122 U.S. 189, 196, 7 S.Ct. 1166, 1169, 30 L.Ed. 1114 (1887) ("[assumption of risk] is a rule of public policy, inasmuch as an opposite doctrine would not only subject employers to unreasonable and often ruinous responsibilities, thereby embarrassing all branches of business. . . ."). Today, because of workmen's compensation laws, the defense is applied less often in its traditional context of work-related injuries.

the plaintiff must have knowledge of the facts constituting a dangerous condition; (2) the plaintiff must know the condition is dangerous; (3) the plaintiff must appreciate the nature and extent of the danger; and (4) the plaintiff must voluntarily expose himself to the danger. *Senn v. Sun Printing Co.*, 295 S.C. 169, 367 S.E.2d 456 (Ct.App.1988). "The doctrine is predicated on the factual situation of a defendant's acts alone creating the danger and causing the accident, with the plaintiffs act being that of voluntarily exposing himself to such an obvious danger with appreciation thereof which resulted in the injury." *Id.* at 173, 367 S.E.2d at 458. Assumption of risk may be implied from the plaintiffs conduct. *Hoeffner v. The Citadel*, 311 S.C. 361, 429 S.E.2d 190 (1993).

As noted by the Court of Appeals, an overwhelming majority of jurisdictions that have adopted some form of comparative negligence have essentially abolished assumption of risk as an absolute bar to recovery. *Davenport*, 325 S.C. at 514 n. 4, 482 S.E.2d at 573 n. 4; *see also* F. Patrick Hubbard & Robert L. Felix, *Comparative Negligence in South Carolina: Implementing Nelson v. Concrete Supply Co.*, 43 S.C.L.Rev. 273, 332 (1992); Jean W. Sexton, *Tort Law—Assumption of Risk and Pennsylvania's Comparative Negligence Statute—Howell v. Clyde, 620 A.2d 1107 (Pa.1993)*, 67 Temp.L.Rev. 903, 910–11 (1994). In analyzing the continuing viability of assumption of risk in a comparative negligence system, many courts distinguish between "express" assumption of risk and "implied" assumption of risk. *See* W. Page Keeton et al., Prosser and Keeton on the Law of Torts, § 68 at 496 (5th ed. 1984). Implied assumption of risk is further divided into the categories of "primary" and "secondary" implied assumption of risk. *Id.* We will discuss each of these concepts below.

 Express assumption of risk applies when the parties expressly agree in advance, either in writing or orally, that the plaintiff will relieve the defendant of his or her legal duty toward the plaintiff. *See* Restatement (Second) of Torts § 496B (1965); Prosser and Keeton, § 68 at 496; Victor E. Schwartz, Comparative Negligence, § 9.2 (3d ed. 1994). Thus, being under no legal duty, the defendant cannot be charged with negligence. Prosser and Keeton, § 68 at 481. Even in those comparative fault jurisdictions that have abrogated assumption of risk, the rule remains that express assumption of

risk continues as an absolute defense in an action for negligence.[2] The reason for this is that express assumption of risk sounds in contract, not tort, and is based upon an express manifestation of consent. *See, e.g., Salinas v. Vierstra,* 107 Idaho 984, 695 P.2d 369, 375 (Idaho 1985); Prosser and Keeton, § 68 at 496.

To avoid confusion, at least one court has suggested replacing the term "express" assumption of risk with "consent." *Salinas,* 695 P.2d at 375. In fact, this Court has analyzed such cases in terms of exculpatory contracts. *Huckaby v. Confederate Motor Speedway, Inc.,* 276 S.C. 629, 281 S.E.2d 223 (1981). In *Huckaby,* a race spectator signed a waiver and release form before suffering an injury at a race track. This Court barred the spectator's suit against the track owner, stating, " 'If a prospective participant wishes to place himself in the competition sufficiently to *voluntarily agree* that he will not hold the organizer or sponsor of the event liable for injuries, the courts should enforce such an agreement.' " *Id.* at 631, 281 S.E.2d at 224 (citation omitted). As an additional sustaining ground, the *Huckaby* Court concluded that the spectator's suit was barred by assumption of risk.

 Express assumption of risk is contrasted with implied assumption of risk which arises when the plaintiff implic-

---

2. *See Knight v. Jewett,* 3 Cal.4th 296, 11 Cal.Rptr.2d 2, 834 P.2d 696 (Cal.1992); *Fell v. Zimath,* 575 A.2d 267 (Del.Super.1989); *Kuehner v. Green,* 436 So.2d 78, 80 (Fla.1983); *Salinas v. Vierstra,* 107 Idaho 984, 695 P.2d 369, 375 (Idaho 1985); *Barrett v. Fritz,* 42 Ill.2d 529, 248 N.E.2d 111 (Ill.1969); *Murray v. Ramada Inns, Inc.,* 521 So.2d 1123 (La.1988); *Wilson v. Gordon,* 354 A.2d 398 (Me.1976); *Kopischke v. First Cont. Corp.,* 187 Mont. 471, 610 P.2d 668 (Mont.1980); *Mizushima v. Sunset Ranch, Inc.,* 103 Nev. 259, 737 P.2d 1158 (Nev.1987); *Siglow v. Smart,* 43 Ohio App.3d 55, 539 N.E.2d 636, 639 (Ohio App.3d 1987); *Rutter v. Northeastern Beaver Cty., Etc.,* 496 Pa. 590, 437 A.2d 1198 (Pa.1981); *Perez v. McConkey,* 872 S.W.2d 897, 905–06 (Tenn.1994); *Farley v. M.M. Cattle Co.,* 529 S.W.2d 751 (Tex.1975); *Sunday v. Stratton Corp.,* 136 Vt. 293, 390 A.2d 398 (Vt.1978); *Boyce v. West,* 71 Wash.App. 657, 862 P.2d 592 (Wash.App.1993); *Brittain v. Booth,* 601 P.2d 532 (Wyo.1979); Henry Woods and Beth Deere, Comparative Fault, § 6.7 at 142 (3d ed. 1996); Schwartz, § 9.2; Prosser and Keeton, § 68 at 496; Carol A. Mutter, *Moving to Comparative Negligence in an Era of Tort Reform: Decisions For Tennessee,* 57 Tenn.L.Rev. 199, 284 (1990); John L. Diamond, *Assumption of Risk After Comparative Negligence: Integrating Contract Theory into Tort Doctrine,* 52 Ohio St.L.J. 717, 726 (1991).

itly, rather than expressly, assumes known risks. As noted above, implied assumption of risk is characterized as either primary or secondary. Primary implied assumption of risk arises when the plaintiff impliedly assumes those risks that are *inherent* in a particular activity. *See, e.g., Fortier v. Los Rios Community College Dist.*, 45 Cal.App.4th 430, 52 Cal. Rptr.2d 812 (1996) (student injured in a collision during football drill); *Swagger v. City of Crystal*, 379 N.W.2d 183 (Minn. App.1985) (injured while watching softball game). Primary implied assumption of risk is not a true affirmative defense, but instead goes to the initial determination of whether the defendant's legal duty encompasses the risk encountered by the plaintiff. *E.g., Perez v. McConkey*, 872 S.W.2d 897 (Tenn. 1994); *Scott v. Pacific West Mountain Resort*, 119 Wash.2d 484, 834 P.2d 6 (Wash.1992); *see also* Prosser and Keeton, § 68 at 496. In *Perez,* the Tennessee Supreme Court summarized the doctrine in the following way:

> In its primary sense, implied assumption of risk focuses not on the plaintiffs conduct in assuming the risk, but on the defendant's general duty of care.... Clearly, primary implied assumption of risk is but another way of stating the conclusion that a plaintiff has failed to establish a prima facie case [of negligence] by failing to establish that a duty exists.

872 S.W.2d at 902. In this sense, primary implied assumption of risk is simply a part of the initial negligence analysis.[3] *Blackburn v. Dorta*, 348 So.2d 287, 291 (Fla.1977).

---

3. In South Carolina, there are no cases that apply the term "primary implied" assumption of risk. However, in *Gunther v. Charlotte Baseball, Inc.*, 854 F.Supp. 424 (D.S.C.1994), the federal district court was faced with the question of whether a spectator at a baseball game was barred, under South Carolina law, from suing the stadium owner for injuries sustained after being struck by a foul ball. The court noted that the issue was one of first impression in South Carolina. The court proceeded to bar the plaintiffs suit, stating, "the vast majority of jurisdictions recognize this hazard [being struck by a foul ball] to be a risk that is assumed by the spectators because it remains after due care has been exercised (erecting a screen), and it is not the result of negligence by the ball club." *Gunther*, 854 F.Supp. at 428 (*citing Anderson v. Kansas City Baseball Club*, 231 S.W.2d 170 (Mo.1950)). The court's statement, in this regard, was an implicit application of the doctrine of primary implied assumption of risk—the defendant's duty of care did not encompass the risk involved, and as such, there was no

 Secondary implied assumption of risk, on the other hand, arises when the plaintiff knowingly encounters a risk created by the defendant's negligence. Carol A. Mutter, *Moving to Comparative Negligence in an Era of Tort Reform,* 57 Tenn.L.Rev. 199, 286 (1990). It is a true defense because it is asserted only after the plaintiff establishes a *prima facie* case of negligence against the defendant. Secondary implied assumption of risk may involve either reasonable or unreasonable conduct on the part of the plaintiff. In *Litchfield Company of South Carolina, Inc. v. Sur–Tech, Inc.,* 289 S.C. 247, 249, 345 S.E.2d 765, 766 (Ct.App.1986), the Court of Appeals illustrated secondary "unreasonable" implied assumption of risk:

> [T]he conduct of a plaintiff in assuming a risk may itself be unreasonable and thus negligent because the risk he assumes is out of all proportion to the advantage which he is seeking to gain. For example, if a plaintiff dashed into a fire in order to save his hat, it might well be argued that he both assumed the risk of being injured and that he acted unreasonably. *In such cases, a defendant can maintain both defenses.*

(emphasis added).[4] Since express and primary implied assumption of risk are compatible with comparative negligence, we will refer to secondary implied assumption of risk simply as "assumption of risk."

 As alluded to in *Litchfield, supra,* assumption of risk and contributory negligence have historically been recognized as separate defenses in South Carolina. *See Ruth v. Lane,* 254 S.C. 431, 175 S.E.2d 820 (1970) (rejecting the argument that the defenses of contributory negligence and assumption of risk may be merged into the same defense and treated

---

*prima facie* case of negligence. Nevertheless, the court relied upon a general theory of assumption of risk since this issue had not yet been directly addressed by a South Carolina court. *Id.* In doing so, the court cited a variety of South Carolina cases including *Huckaby v. Confederate Motor Speedway, Inc.,* 276 S.C. 629, 281 S.E.2d 223 (an express assumption of risk case). *Id.* at 429.

4. Reasonable implied assumption of risk exists when the plaintiff is aware of a risk negligently created by the defendant but, nonetheless, voluntarily proceeds to encounter the risk; when weighed against the risk of injury, the plaintiff's action is reasonable. *See* Jean W. Sexton, 67 Temp.L.Rev. 903.

interchangeably); *Cooper v. Mayes*, 234 S.C. 491, 496, 109 S.E.2d 12, 15 (1959) ("Attempt in such cases to interrelate assumption of risk and contributory negligence is more academic than practical, and sometimes loses sight of the fact that the difference between the two is fundamental and not merely of degree."); *Broom v. Southeastern Highway Contracting Company, Inc.*, 291 S.C. 93, 352 S.E.2d 302 (Ct.App. 1986) (holding that unlike contributory negligence, which is based on carelessness and inadvertence, assumption of risk requires deliberate and voluntary choice to assume a known risk). However, other courts have found assumption of risk functionally indistinguishable from contributory negligence and consequently abolished assumption of risk as a complete defense. *See* Hubbard and Felix, 43 S.C.L.Rev. at 290; Carol A. Mutter, 57 Tenn.L.Rev. at 286.

To date, the only comparative fault jurisdictions that have retained assumption of risk as an absolute defense are Georgia,[5] Mississippi,[6] Nebraska,[7] Rhode Island,[8] and South Dakota.[9] *See* Henry Woods and Beth Deere, Comparative Fault, § 6:6 (3d ed. 1996); Schwartz, § 9.3. Only the Rhode Island Supreme Court has provided a detailed discussion of why it believes the common law form of assumption of risk should survive under comparative negligence. *See* Schwartz, § 9.3. In *Kennedy v. Providence Hockey Club, Inc.*, 119 R.I. 70, 376 A.2d 329 (R.I.1977), the Rhode Island Supreme Court distinguished between assumption of risk and contributory negligence, emphasizing the former was measured by a subjective standard while the latter was based on an objective, reasonable person standard. The court further noted that it had in the past limited the application of assumption of risk to those situations where the plaintiff had actual knowledge of the

---

5. *Harris v. Star Service & Petroleum Co.*, 170 Ga.App. 816, 318 S.E.2d 239 (1984).

6. *Singleton v. Wiley*, 372 So.2d 272 (Miss.1979).

7. *Fritchley v. Love-Courson Drilling Co.*, 177 Neb. 455, 129 N.W.2d 515 (Neb.1964).

8. *Kennedy v. Providence Hockey Club, Inc.*, 119 R.I. 70, 376 A.2d 329 (R.I.1977).

9. *Bartlett v. Gregg*, 77 S.D. 406, 92 N.W.2d 654 (S.D.1958).

hazard. The court then rejected the premise that assumption of risk and contributory negligence overlap:

> [C]ontributory negligence and assumption of the risk do not overlap; the key difference is, of course, the exercise of one's free will in encountering the risk. Negligence analysis, couched in reasonable hypotheses, has no place in the assumption of the risk framework. When one acts knowingly, it is immaterial whether he acts reasonably.

*Kennedy,* 376 A.2d at 333.

Rhode Island's conclusions are in sharp contrast with the West Virginia Supreme Court's opinion in *King v. Kayak Manufacturing Corp.,* 182 W.Va. 276, 387 S.E.2d 511 (W.Va. 1989). Like Rhode Island, the West Virginia Supreme Court in *King* recognized that assumption of risk was conceptually distinct from contributory negligence. The court specifically noted that West Virginia's doctrine of assumption of risk required actual knowledge of the dangerous condition, which conformed with the general rule elsewhere in the country. *King,* 387 S.E.2d at 516. In fact, the court cited Rhode Island's decision in *Kennedy* as evidence of this general rule. *Id.* at n. 9. Nevertheless, the West Virginia court concluded that the absolute defense of assumption of risk was incompatible with its comparative fault system.[10] The court therefore adopted a *comparative assumption of risk* rule, stating, "a plaintiff is not barred from recovery by the doctrine of assumption of risk unless his degree of fault arising therefrom equals or exceeds the combined fault or negligence of the other parties to the accident." *King,* 387 S.E.2d at 517.[11] The court explained that the absolute defense of assumption of risk was as repugnant to its fault system as the common law rule of contributory negligence. *Id.*

---

**10.** In *Bradley v. Appalachian Power Co.,* 163 W.Va. 332, 256 S.E.2d 879 (W.Va.1979), West Virginia adopted a "less than or equal to" comparative negligence system whereby a plaintiff is barred from recovery only if his negligence is equal to or greater than the defendant's negligence.

**11.** The court offered the following jury instruction:

> Under our law, the plaintiff can be guilty of assumption of risk and still be entitled to recover damages from the defendant(s) so long as the plaintiff's fault from assumption of risk does not equal or exceed the combined negligence of the other parties whose negligence contributed to the accident.

*King,* 387 S.E.2d at 517 n. 17.

A comparison between the approaches in West Virginia and Rhode Island is informative. Both jurisdictions recognize that assumption of risk is conceptually distinct from contributory negligence. However, Rhode Island focuses on the objective/subjective distinction between the two defenses and, therefore, retains assumption of risk as a complete bar to recovery. On the other hand, West Virginia emphasizes that the main purpose of its comparative negligence system is to apportion fault. Thus, West Virginia rejects assumption of risk as a total bar to recovery and only allows a jury to consider the plaintiffs negligence in assuming the risk. If the plaintiff's total negligence exceeds or equals that of the defendant, only then is the plaintiff completely barred from recovery.

Like Rhode Island and West Virginia, South Carolina has historically maintained a distinction between assumption of risk and contributory negligence, even when the two doctrines appear to overlap. *See Litchfield*, 289 S.C. 247, 345 S.E.2d 765. Thus, the pertinent question is whether a plaintiff should be completely barred from recovery when he voluntarily assumes a known risk, regardless of whether his assumption of that risk was reasonable or unreasonable. Upon considering the purpose of our comparative fault system, we conclude that West Virginia's approach is the most persuasive model.

In *Nelson*, we adopted Chief Judge Sanders's analysis of comparative negligence as stated in *Langley v. Boyter*, 284 S.C. 162, 325 S.E.2d 550 (Ct.App.1984) *opinion quashed on procedural grounds by* 286 S.C. 85, 332 S.E.2d 100 (1985). In *Langley*, Judge Sanders provided the following justification for adopting a comparative negligence system: "It is contrary to the basic premise of our fault system to allow a defendant, who is at fault in causing an accident, to escape bearing any of its cost, while requiring a plaintiff, who is no more than equally at fault or even less at fault, to bear all of its costs." *Langley*, 284 S.C. at 183, 325 S.E.2d at 562. By contrast, the main reason for having the defense of assumption of risk is not to determine fault, but to prevent a person who knowingly and voluntarily incurs a risk of harm from holding another person liable. *See Wallace v. Owens–Illinois, Inc.*, 300 S.C. 518, 389 S.E.2d 155 (Ct.App.1989). Cotton Hope argues that the justification behind assumption of risk is not in conflict with South Carolina's comparative fault system. We disagree.

As stated by Judge Sanders, it is contrary to the premise of our comparative fault system to require a plaintiff, who is fifty-percent or less at fault, to bear all of the costs of the injury. In accord with this logic, the defendant's fault in causing an accident is not diminished solely because the plaintiff knowingly assumes a risk. If assumption of risk is retained in its current common law form, a plaintiff would be completely barred from recovery even if his conduct is reasonable or only slightly unreasonable. In our comparative fault system, it would be incongruous to absolve the defendant of all liability based only on whether the plaintiff assumed the risk of injury. Comparative negligence by definition seeks to assess and compare the negligence of both the plaintiff and defendant. This goal would clearly be thwarted by adhering to the common law defense of assumption of risk.[12]

Our conclusion that the absolute defense of assumption of risk is inconsistent with South Carolina's comparative negligence system is buttressed by our recent opinion in *Spahn v. Town of Port Royal*, 330 S.C. 168, 499 S.E.2d 205 (1998). In *Spahn*, we observed that South Carolina had historically treated the doctrine of last clear chance as separate and distinct from the doctrine of contributory negligence. Nevertheless, we held that last clear chance had been subsumed by our adoption of comparative negligence in *Nelson*. We stated that the "all or nothing" effect of last clear chance, in relieving the plaintiff of liability, was inconsistent with the purpose and policy behind our adoption of comparative negligence. In support of this position, we cited *Laws v. Webb*, 658 A.2d 1000 (Del.1995) (a doctrine that assigns sole liability to one party regardless of the amount of fault simply cannot survive under a system of comparative negligence).

Based on the above discussion, we answer the first five issues presented in this appeal in the following manner: (1) although the absolute defense of assumption of risk has historically been treated as a separate defense from contributory negligence, it is incompatible with our comparative fault system; (2) a plaintiffs conduct in assuming a risk can be compared with the defendant's negligence; (3) a plaintiffs

---

12. The Ohio Supreme Court used a similar analysis in *Anderson v. Ceccardi*, 6 Ohio St.3d 110, 451 N.E.2d 780, 783 (Ohio 1983).

conduct in assuming the risk can be made a part our comparative fault system; (4) by abolishing assumption of risk as an absolute bar to recovery, South Carolina will not be adopting a policy that would encourage people to take unnecessary risks; and (5) even if Davenport assumed the risk of injury, he will not be barred from recovery unless his negligence exceeds the defendant's negligence.

We therefore hold that a plaintiff is not barred from recovery by the doctrine of assumption of risk unless the degree of fault arising therefrom is greater than the negligence of the defendant. To the extent that any prior South Carolina cases are inconsistent with this approach, they are overruled. Express and primary implied assumption of risk remain unaffected by our decision.

### B. RETROACTIVE/PROSPECTIVE APPLICATION OF NEW RULE (Issue 10)

 Cotton Hope argues that if assumption of risk is abolished as an "all or nothing" defense, such action should be applied prospectively only. We disagree.

 "[T]he general rule regarding retroactive application of judicial decisions is that decisions creating new substantive rights have prospective effect only, whereas decisions creating new remedies to vindicate existing rights are applied retrospectively. Prospective application is required when liability is created where formerly none existed." *Toth v. Square D Co.*, 298 S.C. 6, 8, 377 S.E.2d 584, 585 (1989) (citations omitted); *see also Hardaway v. Lexington County*, 314 S.C. 22, 443 S.E.2d 569 (1994). In the instant case, Davenport may still be barred from recovery if his negligence exceeds Cotton Hope's negligence. Thus, his conduct in assuming the risk remains part of the comparative negligence analysis. Moreover, it would not be unfair or inappropriate to apply such a ruling retrospectively because defendants do not rely upon the doctrine of assumption of risk when they commit negligent acts.

We therefore apply our present ruling to the instant case and to all causes of action that arise or accrue after the date of this opinion. Thus, except for this case, if a cause of action arose or accrued prior to our decision today, it will be governed by the common law form of assumption of risk, if

applicable, as it existed under South Carolina case law before this opinion.

## C. APPLICATION OF NEW RULE TO INSTANT CASE (Issues 6–9)

Cotton Hope argues that even if this Court abrogates assumption of risk as a complete defense, the trial court's directed verdict should be upheld based on the following arguments: (1) as a matter of law, Cotton Hope did not breach any duty owed to Davenport; (2) the broken light was not a proximate cause of Davenport's injury; and (3) as a matter of law, Davenport's negligence exceeded that of Cotton Hope. We disagree.

Upon review of an order granting a motion for directed verdict, the evidence and all reasonable inferences must be viewed in the light most favorable to the non-moving party. If only one inference can be drawn from the evidence, the motion must be granted. *Adams v. G.J. Creel and Sons, Inc.,* 320 S.C. 274, 465 S.E.2d 84 (1995); *Brady Dev. Co., Inc. v. Town of Hilton Head Island,* 312 S.C. 73, 439 S.E.2d 266 (1993).

Cotton Hope argues that it did not breach any duty owed to Davenport Specifically, Cotton Hope contends that it only had a duty to warn Davenport of concealed dangerous conditions, and since Davenport knew of the danger, Cotton Hope was relieved of its duty to warn. In *Murphy v. Yacht Cove Homeowners Association,* 289 S.C. 367, 345 S.E.2d 709 (1986), we held that a member of a condominium association, established pursuant to the Horizontal Property Act, may bring a tort action against the association for failing to properly maintain the common elements. Pursuant to the South Carolina Horizontal Property Act, "general common elements" include stairways. S.C.Code Ann. § 27–31–20(f)(2) (1991). Section 27–31–120 further provides that "[a]ny conveyance or lease of an individual apartment is deemed to also convey or lease the undivided interest of the owner in the common elements, both general and limited, appertaining to the apartment without specifically or particularly referring to same." Thus, Cotton Hope owed a duty to Davenport, the lessee, to properly maintain the stairway.

Cotton Hope next argues that the broken light was not the proximate cause of Davenport's injury. Cotton Hope

contends that the broken light could not have caused the injury because the light, if working, would have been blocked by Davenport's body anyway. We find this to be a fact question for jury determination. *Oliver v. South Carolina Dep't of Highways & Pub. Transp.*, 309 S.C. 313, 422 S.E.2d 128 (1992) (proximate causation is ordinarily a fact question for the jury).

Cotton Hope finally argues that we should affirm the trial court's ruling that, as a matter of law, Davenport was more than fifty-percent negligent. The trial court based its ruling on the fact that Davenport knew of the danger weeks before his accident, and he had a safe, alternate route. However, there was also evidence suggesting Cotton Hope was negligent in failing to properly maintain the lighting in the exterior stairway. In the light most favorable to Davenport, it could be reasonably concluded that Davenport's negligence in proceeding down the stairway did not exceed Cotton Hope's negligence. Thus, it is properly submitted for jury determination.

### CONCLUSION

Based on the foregoing, the Court of Appeals' decision is **AFFIRMED AS MODIFIED.**

FINNEY, C.J., MOORE, WALLER and BURNETT, JJ., concur.