15077

SINGLETON v. McLEOD *ET AL.*

(8 S. E. (2d), 908)

380

April, 1939.

*Messrs. Legge & Gibbs,* for appellants,

*Messrs. A. R. McGowan* and *T. Brooks Alford,* for respondent,

May 6, 1940.

*Per curiam.*

Action by Maria Singleton (formerly Maria Green), as administratrix of Sam Green, for the alleged pain and suffering of Sam Green between the time of the accident and the time of his death.

The complaint alleges that at the time of injury to respondent's intestate he was under the control of the appellant, Andrew Stutts, the superintendent of the logging operations of his co-appellants, R. L. McLeod & Son; that on November 6, 1933, Sam Green was employed as a logger by appellants and engaged at his duty about the grounds of their skidder, when Stutts, as superintendent thereof, ordered him to go with the logger he was at work with, into the woods nearby to a certain drift cut by sawyers a few days previously, and cut and remove two trees which had been left standing therein. Paragraphs 4, 5, 6, 7 and 8 of the complaint are as follows:

"4. That plaintiff's intestate and assistant protested at once to said superintendent Andrew Stutts, that they were not working as members of the crew of sawyers when the drift was cut, that it was new and strange to them, and the work was not part of their duty and pay as loggers, and that Andrew Stutts then informed them that there was a shortage of men at work, and upon further insistence by Andrew Stutts that they go and remove the trees as ordered, they accompanied Andrew Stutts to the first of the selected trees, and under his instructions and personal direction sawed it down.

"5. That subsequently Andrew Stutts, after setting this plaintiff's intestate and assistant at work on removing from the drift the second tree, which stood in the midst of high banks of tree tops and limbs left by sawyers in the drift, and giving instructions as to how the tree should be sawed

and the location it should fall to clear the drift, and urging that the tree be removed as quickly as possible and that this plaintiff's intestate and assistant return to their duty at the skidder, the said Andrew Stutts left this plaintiff's intestate and assistant at work sawing down said tree, and departed from the drift to resume his duty in and about the skidder and nearby woods.

"6. That while plaintiff's intestate and assistant were sawing down the second tree as aforesaid, a large limb of a different tree, that had become lodged in the branches above and out of eyesight of this plaintiff's intestate and assistant at work below, suddenly fell with such speed and force and by and through the negligence, recklessness, carelessness, willfulness and wantonness of the defendants, their agents and servants, upon this plaintiffs' intestate, that he was knocked into and pinned to the earth, painfully and seriously injured in his person.

"7. That the damage and injury of this plaintiff's intestate was due to and caused by the sole, joint and concurrent negligence, recklessness, carelessness, willfulness and wantonness of the said defendants, R. L. McLeod and Son, and Andrew Stutts, in the following particulars, to wit:

"(a) In ordering this plaintiff's intestate into service as a sawyer, which was not within the scope of his employment as a logger.

"(b) In neglecting and failing to furnish plaintiff's intestate a reasonably safe place in the performance of a duty that was not an ordinary one, considering the drift was new and strange to plaintiff's intestate, and a duty of employment not ordinarily undertaken by experienced sawyers.

"(c) In failing and neglecting to furnish plaintiff's intestate a competent supervisor and lookout, considering the place, after the selection of a particular tree, and directions as to exact spot to be sawed and locality it should fall, and without leaving details to discretion of plaintiff's intestate:

"(d) In neglecting and failing to warn plaintiff's intestate of the danger to which he was exposed, after a particular tree had been selected, and plaintiff's intestate set to work, where plaintiff's intestate was not aware of the danger, and where defendants knew, or should have known, the danger of the particular tree.

"8. That by reason of the sole, joint, and concurrent negligence, carelessness, recklessness, willfulness and wantonness of the defendants, R. L. McLeod and Son and Andrew Stutts, their agents and servants, this plaintiff's intestate was knocked into and pinned to the earth by the terrific speed and weight of said limb, his head and body bruised and broken, that he lay for five days thereafter in a hospital, suffered the most excruciating pain and mental anguish, all to his damage * * *."

The appellants, while answering separately, in effect pleaded the same defenses. They denied all material allegations of the complaint, and pleaded contributory negligence on the part of respondent's intestate, and that the accident referred to in the complaint and the injuries sustained by him were due to and the result of a risk incident to the employment of, and assumed by respondent's intestate.

Respondent's statement of the "Questions Involved," numbers 1 and 3, follows:

"Was there sufficient evidence to warrant the trial Judge sending the case to the jury and to sustain the jury's verdict?"

"Did or not the trial Judge err under the pleadings in permitting the introduction of evidence showing that the defendant assured the plaintiff's intestate, after his protest, that the work was safe and there was no danger?"

We will discuss these questions in inverse order.

"The object of pleading is to advertise the parties of the issues they will be called upon to meet, and give them time and opportunity to prepare for trial." *Shelton v. Ry. Co.,* 86 S. C., 98, 67 S. E., 899, 901.

Over the strenuous objection of appellant's counsel predicated upon the absence in the complaint of any allegation of assurance of safety, respondent was permitted to introduce evidence that when the appellant Stutts instructed respondent's intestate to go in the "drift" and cut two trees, he objected to going by reason of the danger attaching thereto, and finally went only after assurance by Mr. Stutts that "it is all right," and "it is all right; no danger—."

The trial Judge ruled that the complaint was "sufficiently broad" to permit of the introduction of this testimony, and there was no offer to amend the complaint so as to put appellants upon notice that their plea of assumption of risk and contributory negligence would be unavailing, if it could be claimed that respondent's intestate relied upon the alleged superior knowledge of Mr. Stutts as to conditions and dangers which would be or would not be encountered in the cutting of these trees. And the complaint not having been amended, appellants had no opportunity of moving to withdraw the case from the jury and for a continuance by reason of being taken by surprise.

We have carefully read and re-read the complaint, which undertakes to set out in detail the circumstances under which respondent's intestate quit the work in which he was engaged immediately prior to entering upon the work of felling these trees, and are unable to find therein any allegation which could possibly be construed as pleading that respondent's intestate was given assurance of safety by Stutts or anyone connected with appellants on which he relied; or that he was in any other manner relieved of his own obligation to exercise his senses to guard against dangers normally incident to this work.

Ordinarily the admission or rejection of testimony rests largely in the discretion of the trial Judge, but the admission of evidence along this line is so manifestly harmful to appellants, we are forced to hold that it was error to permit same. The theory of the complaint is that respondents'

intestate was unaware of the danger of cutting trees where there had been a partial cutting, and that he needed special warning and supervision while performing this service. The allegation of failure to furnish respondent's intestate a reasonably safe place to work is of course a relative matter—dependent upon the operations and class of work necessary to be performed in the business in which appellants were engaged. Under said theory of the complaint, appellants could not have been apprised that testimony would be offered (and admitted in evidence) that respondent's intestate not only knew of the dangers of cutting trees in a drift, but consented to do so only after assurance of safety, by the appellant Stutts, the alleged superintendent of the logging business of his co-appellant, upon whose superior knowledge he relied. In fact, such testimony was wholly inconsistent with some of the specifications of alleged negligence in the complaint.

We now consider the question if there was sufficient evidence to warrant the trial Judge in sending the case to the jury, and of course, in passing upon this issue, we cannot consider the testimony above held incompetent, there being no allegation or specification of negligence in the complaint to which it was relevant and competent.

As was stated in *McKinney v. Woodside Cotton Mills,* 167 S. C., 438, 166 S. E., 499, it is elementary that the Court, in passing upon a motion for a nonsuit (and, we add, a directed verdict), is bound to consider the evidence in the most favorable light to the plaintiff; and that if the master seeks to relieve himself of liability on the ground that the servant assumed the risk, he must show, not only that the servant knew the danger, or that it was so obvious that he should have known it, but also that he comprehended or appreciated it.

Quoting from *Scott v. International Agr. Corporation,* 180 S. C., 1, 184 S. E., 133, 135:

"An employée assumes all of the ordinary risks of his employment; that is to say, he assumes the risk of all dan-

gers ordinarily incident to that employment. He does not, however, assume the risk of extraordinary dangers or dangers caused by the negligence of the employer or its agents and servants, unless those dangers are known to him and appreciated by him, or by the exercise of ordinary care would become known to him and appreciated by him, whether ordinary, extraordinary or however caused. * * *

"Assumption of risk is peculiarly a question for the jury, and only in very rare cases should a trial Judge direct a nonsuit or direct a verdict in favor of a defendant on this ground, but there are rare cases in which this should be done." Citing *McKinney v. Woodside Cotton Mills, supra.*

It is undisputed that respondent's intestate and another were cutting or sawing down a tree, and that as the tree was falling a limb presumably from a tree previously felled, which had lodged in the top or branches of the tree being cut down, became dislodged and fell, striking respondent's intestate and causing the injuries complained of. It is not claimed that the mere fact that a limb had lodged in the top of the tree which was being cut was any evidence of negligence on the part of appellants, since as disclosed by the testimony it is an ordinary incident in timbering operations that a falling tree may strike another and leave a broken branch lodged therein. It is for this reason that men having experience in cutting trees in a "drift cut" recognize the hazardness of such employment, and realize the importance of looking carefully for such lodged limbs before felling a tree.

The testimony shows that respondent's intestate, while for three or four weeks prior to his injury and death had been working at the skidder yard, was an experienced sawyer, having had several years' experience in the cutting (sawing) down of trees in the woods, and for quite a number of years had worked under the directions of the appellant, Stutts, when both were in the employ of Burton Lumber Company, though this was before the plant of the last-mentioned company was burned in 1920. There was also

testimony that respondent's intestate had since working for the appellants alternated in sawing at the skidder yard, and in the woods; and was a thoroughly competent and experienced woods sawyer. There is a denial that respondent's intestate had worked in the woods for appellants for three weeks prior to his injury, but this witness (the brother of the respondent's intestate) admitted that he had been working for appellants for only three weeks (on direct examination he stated he had worked at the skidder only one week) and that his brother had been working for them before he was given employment.

The respondent in her printed argument says: "The complaint alleged in substance that the defendants ordered the deceased, together with his companion logger (or yard sawyer, not woods sawyer), into the woods to cut trees in a drift which was cut by sawyers a few days previous; that the deceased protested at once that they were not woods sawyers; that the drift was new and strange to them; that it was not a part of their duty and pay as loggers (yard sawyers); that the superintendent insisted that they go and remove the trees as ordered, accompanied them to the trees and urged that the trees be removed as quickly as possible. That in so doing, the deceased was killed by reason of the negligence of the defendants in ordering the deceased into service as a sawyer, which was not within the scope of his employment as a logger; in neglecting to furnish him with a reasonably safe place in the performance of a duty which was not an ordinary one; in failing to furnish the deceased a competent supervisor or lookout, considering the place; in neglecting to warn the deceased of the danger to which he was exposed, where the deceased was not aware of the danger and where the defendants knew or should have known the danger of the particular tree."

Failure to show negligence on the part of appellants or either of them, and contributory negligence and assumption of risk on the part of the deceased, were the grounds

upon which the motions for nonsuit and directed verdict were made.

In *Hice v. Dobson Lumber Company,* 180 S. C., 259, 185 S. E., 742, 744, this Court stated: "We realize that there is some distinction between the defenses of assumption of risk and contributory negligence. This distinction is either broadened or narrowed under the particular facts of each given case." So is it in this case.

Respondent's statement of negligence of appellants is: (1) "In ordering the deceased into service as a sawyer, which was not within the scope of his employment as a logger." Conceding without holding that this would constitute negligence, when the deceased accepted the new employment or acceded to the command to render the service of a woods sawyer, he assumed the ordinary risks of such employment. Aside from this, however, the testimony is replete with evidence that the deceased was an experienced woods sawyer. (2) "In neglecting to furnish him with a reasonably safe place in the performance of a duty which was not an ordinary one." The record does not disclose that the cutting of trees in a "drift cut" is not an ordinary one for a woods cutter. The language of the Court in *Grier v. Winyah Lumber Company,* 144 S. C., 10, 141 S. E., 685, is so applicable, we quote therefrom, at page 15 of the S. C. Reports, 141 S. E., at page 686: "I. Was there any evidence showing negligence on the part of the defendant in failing to furnish the plaintiff a reasonably safe place to work? We think not. As said in *Brabham v. Telegraph Co.,* 71 S. C., 53, 50 S. E., 716, 'the place and character of such work (felling and removing trees) necessarily involved some danger as an incident of that kind of employment.' The plaintiff had had several years experience in logging, and must have known of the existence of such danger, which was open and obvious, and could as readily have been known and appreciated by him as by the defendant. As in *Wofford v. Cotton Mills,* 72 S. C., 346, 51 S. E., 918, there was no 'evidence of disability or lack of ex-

perience or ordinary intelligence. The risk was obvious, and could not fail to be comprehended by a person of meager, not to say ordinary understanding.' " (3) "In failing to furnish the deceased a competent supervisor or lookout, considering the place." As aforesaid, the respondent's intestate was an experienced woods sawyer and was bound to know of the danger of limbs from other trees which had been cut being lodged in the top of the tree to be cut. Under these circumstances, it was as much his duty as that of appellants to examine the branches and tops of the trees he was instructed to fell for lodged limbs. If he didn't make a careful examination, that is, carefully look for a lodged limb, he was guilty of contributory negligence which bars a recovery, and also assumed the risk of a lodged limb being in the top of tree. If he did make a careful inspection of the tree and failed to see the limb, then the presumption is that appellants would not have seen it. There is no intimation that the deceased did not have good eyesight. (4) "In neglecting to warn the deceased of the danger to which he was exposed, where the deceased was not aware of the danger and where the defendants knew or should have known the danger of the particular tree." As aforesaid and repeating, the deceased was an experienced woods sawyer, knew or should have known the danger to which he was exposed, and appellants, especially Stutts, knew or had every reason to believe that the deceased required no warning of the danger. In these circumstances, a warning was unnecessary. Of course had the deceased been an inexperienced woods cutter, it would have been negligence not to warn him of the danger.

For the reasons above stated, the judgment appealed from is reversed, and the case remanded for entry of judgment in favor of appellants.

MR. CHIEF JUSTICE BONHAM, MESSRS. JUSTICES BAKER and FISHBURNE and MESSRS. ACTING ASSOCIATE JUSTICES E. C. DENNIS and WM. H. GRIMBALL concur.