550 S.E.2d 872

Lora CUNNINGHAM, a minor by Guardian
ad Litem, Linda A. Grice, Appellant,

v.

HELPING HANDS, INC., and City of Aiken Department
of Public Safety, Respondents.

No. 3345.

Court of Appeals of South Carolina.

Heard March 7, 2001.
Decided May 21, 2001.
Refiled July 10, 2001.

254

Jefferson D. Turnipseed, Michael B. Hart and Ilene Stacey King, all of Turnipseed & Associates, of Columbia, for appellant.

Andrew F. Lindemann and William H. Davidson, II, both of Davidson, Morrison & Lindemann; and Thomas C. Salane, of Turner, Padget, Graham & Laney, all of Columbia, for respondent.

## ORDER DENYING PETITION FOR REHEARING

### PER CURIAM:

We withdraw our original opinion and substitute the attached opinion. After a careful consideration of the Petition for Rehearing, the Court is unable to discover that any material fact or principle of law has been either overlooked or disregarded and hence, there is no basis for granting a rehearing.

It is, therefore, ordered that the Petition for Rehearing be denied.

### HEARN, Chief Judge:

Lora Cunningham appeals an order granting summary judgment to Helping Hands, Inc. (Helping Hands) and the City of Aiken Department of Public Safety (the Department) based on the trial court's findings that Cunningham assumed the risk of her injuries and that her negligence exceeded that of the two defendants as a matter of law. We affirm the grant of summary judgment as to the Department and reverse and remand with respect to Helping Hands.

## FACTS

Helping Hands is a charitable corporation operating a home for abused and neglected children in Aiken, South Carolina. At the time of her injury, Cunningham was fifteen years old. She was residing at Helping Hands as a ward of the Department of Social Services (DSS) and the Continuum of Care for Emotionally Disturbed Children. Helping Hands was aware that Cunningham had been evaluated for oppositional defiant disorder and had been prescribed Prozac and Ritalin.

On September 8, 1996, Lt. Frank Conoly, a public safety officer with the Department, brought a fire truck to Helping Hands' premises to visit the children and let them see and climb onto the truck. When Conoly arrived, two members of

the Helping Hands staff, John Heos and Lanita Battle, brought between six and ten teenagers to the fire truck.

At the conclusion of his visit, Conoly told the teenagers he was leaving and to stand clear of the fire truck. He walked around the truck and checked to make sure all the children were off and standing clear. He then got into the truck and started to leave. As the truck began to move, Cunningham jumped onto the passenger side running board of the vehicle. As the truck drove away, Cunningham became frightened, either jumped or slipped from the truck, and fell under the rear wheels.

No staff members were outside with the teenagers when Cunningham jumped back onto the truck. Heos had gone inside the cottage to help another child with a sprained ankle, and Battle had gone inside to use the restroom and while there had answered the telephone. Heos was inside the cottage watching the children through a window when the fire truck began to move.

Cunningham's Guardian ad Litem brought this personal injury action against Helping Hands and the Department. She contends Helping Hands breached its duty of care and supervision of Cunningham. Likewise, she contends the Department was negligent through the acts of its agents, officers, and employees, including the acts of Conoly. Helping Hands answered alleging general denials, limited immunity, assumption of risk, and comparative negligence. Similarly, the Department answered alleging general denials, limited immunity, assumption of risk, and comparative negligence.

Both Helping Hands and the Department moved for summary judgment on the ground that Cunningham's actions were the sole cause of her injuries or otherwise barred recovery as a matter of law. The trial court granted these motions, finding as a matter of law that Cunningham assumed the risk of injury and that even if assumption of risk was not a complete bar, the negligence of Cunningham was greater than that of Helping Hands and the Department combined as a matter of law. Cunningham made a motion to alter or amend the order which the trial court denied. This appeal followed.

## SCOPE OF REVIEW

■ On appeal from an order granting summary judgment, we must consider the evidence in the light most favorable to the nonmoving party. *Summer v. Carpenter,* 328 S.C. 36, 492 S.E.2d 55 (1997). Summary judgment should be granted only when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Rule 56(c), SCRCP; *Café Assocs. v. Gerngross,* 305 S.C. 6, 9, 406 S.E.2d 162, 164 (1991). "Assumption of risk is peculiarly a question for the jury, and only in very rare cases should a trial judge direct a nonsuit or direct a verdict in favor of a defendant on this ground, but there are rare cases in which this should be done." *Singleton v. McLeod,* 193 S.C. 378, 386, 8 S.E.2d 908, 911–12 (1940); *see also Small v. Pioneer Mach., Inc.,* 316 S.C. 479, 489, 450 S.E.2d 609, 615 (Ct.App.1994) ("The defenses of contributory negligence and assumption of risk ordinarily present questions of fact for the jury and only rarely become questions of law for the court to determine.").

## ANALYSIS

### I. Assumption of Risk

Cunningham argues the trial court erred in granting the motions for summary judgment because a question of fact exists with respect to whether she assumed the risk of her injury. We agree as to Helping Hands and disagree as to the Department because we find Helping Hands owed a higher duty to Cunningham than did the Department.

■ This case is governed by the common law defense of assumption of risk because it accrued before the issuance of our supreme court's decision in *Davenport v. Cotton Hope Plantation Horizontal Prop. Regime,* 333 S.C. 71, 508 S.E.2d 565 (1998). The defense of assumption of risk has four elements: "(1) the plaintiff must have knowledge of the facts constituting a dangerous condition; (2) the plaintiff must know the condition is dangerous; (3) the plaintiff must appreciate the nature and extent of the danger; and (4) the plaintiff must voluntarily expose himself to the danger." *Id.* at 78–79, 508 S.E.2d at 569; *see also Senn v. Sun Printing Co.,* 295 S.C. 169, 173, 367 S.E.2d 456, 458 (Ct.App.1988) ("The doctrine is

predicated on the factual situation of a defendant's acts alone creating the danger and causing the accident, with the plaintiff's act being that of voluntarily exposing himself to such an obvious danger with appreciation thereof which resulted in the injury.").

### A. Helping Hands

■ The trial court found that Helping Hands owed Cunningham a "nonspecific, generalized duty to supervise and monitor teenagers committed to its care" and held that an adult is not required to keep a constant and unremitting watch over a child, citing *Dennis by Evans v. Timmons*, 313 S.C. 338, 437 S.E.2d 138 (Ct.App.1993). We do not agree that the principles articulated in *Dennis* define the scope of the duty Helping Hands owed to Cunningham.

In *Dennis*, a child was injured with a screwdriver while playing on a neighbor's property. The screwdriver had been inadvertently left underneath a mobile home, and as the child and his playmates tossed it around, it struck him in the eye. This court upheld the grant of a directed verdict in favor of the landowners, holding that (1) a screwdriver is not always a dangerous instrumentality and (2) although a property owner may owe a heightened duty to children beyond that owed to adult licensees or trespassers where a dangerous instrumentality is involved, the landowners had no legal duty to supervise continuously children playing in their yard. Without evidence that the landowners furnished or negligently permitted access to the screwdriver, the directed verdict was proper.

Because we find the facts in *Dennis* so widely different from those presented here, we do not find *Dennis* controlling. We cannot equate the duty owed by a landowner to a neighbor's child with that owed by a licensed group home to children placed under its care and supervision.

■ By regulation, group homes are licensed to provide programs of care "which include adequate protection, supervision and maintenance of children in care; safe physical facilities; and opportunities for appropriate learning experiences for the children and which allow for the healthy physical and mental growth of the children in care and are directed toward the development of well-adjusted, independent, responsible

individuals." 27 S.C.Code Ann. Regs. 114–590(A)(1) (1976). Therefore, Helping Hands had a specific duty to supervise Cunningham and the other children living there. Its personnel manual states that clients are to be supervised at all times by Helping Hands staff, and further, "staff are expected to only take breaks when it will not interfere with the daily routine of the children, supervision or activities of the children." Employees of facilities like Helping Hands are required by law to be familiar with their procedural manuals. 27 S.C.Code Ann. Regs. 114–590(C)(ii) (1976). Lanita Battle, the counselor on duty when Cunningham was injured, admitted that the responsibilities of a Helping Hands Teen Counselor included client safety and supervision at all times.[1] Moreover, Helping Hands' staff knew that Cunningham suffered from oppositional defiant disorder and therefore might not obey a warning to stand clear of the fire truck. In addition, Heos acknowledged in his deposition that he had seen Cunningham jump in front of the fire truck on at least one prior occasion. Thus, we disagree with the trial judge's characterization of Helping Hands' duty as "general" and "nonspecific."

"Where a duty to protect exists, a Defendant cannot claim that the victim's injury was the result of assumption of risk or contributory negligence if the victim's conduct was within the foreseeable risk to be protected." F.P. Hubbard & R.L. Felix, *The South Carolina Law of Torts* 94 (2d ed.1997). South Carolina courts have previously recognized that assumption of risk cannot be a defense in cases where a defendant has a duty to prevent a patient from committing suicide and the patient commits suicide. *Hoeffner v. The Citadel*, 311 S.C. 361, 367, 429 S.E.2d 190, 193 (1993); *Bramlette v. Charter–Medical–Columbia*, 302 S.C. 68, 74, 393 S.E.2d 914, 917 (1990). We believe this principle is applicable here because Helping

---

1. The following testimony by Battle shows her understanding of the duty undertaken by Helping Hands with respect to its wards:

    Q. Now would you agree that one of your job duties is the safety of the children in your care?

    A. Yes.

    Q. And are you given any instruction, particularly in what you are supposed to do to provide for the safety of the children in your care?

    A. We are supposed to monitor the children.

    Q. What does that mean exactly?

    A. To know their whereabouts at all times.

Hands had a duty to supervise Cunningham at all times and its breach of that duty may have caused her injury.[2]

We find Helping Hands' duty to Cunningham is similar to that present in *Grooms v. Marlboro County School District,* 307 S.C. 310, 414 S.E.2d 802 (Ct.App.1992). In *Grooms,* the parents of a mentally disabled fifteen-year-old student sued the school district for injuries he sustained while under the supervision of the school janitor. Because the child had been a discipline problem at school, he had been instructed to skip class and report to the janitor when he thought he might cause trouble in the classroom. While under the janitor's supervision, the child wrestled with another student and injured his head. In reversing summary judgment, this court held that a genuine issue of material fact existed as to whether the school district was grossly negligent in the exercise of its duty to supervise students. We believe a similar question of fact exists here.

Helping Hands had knowledge of Cunningham's disorder and a duty to prevent her from harming herself and others as a result of that disorder. Cunningham was placed under Helping Hands' care, and by regulation and its own policies, Helping Hands had a duty to supervise her at all times. Even if there is evidence that Cunningham assumed the risk of her injury, that evidence is not sufficient to warrant judgment as a matter of law given Helping Hands' duty to supervise its charges. We therefore hold a jury question exists as to whether Helping Hands' failure to supervise resulted in Cunningham's injury.

### B. The Department

■ We concur with the grant of summary judgment to the Department. Cunningham admitted she jumped on the side of the fire truck as she heard Conoly start it. She admitted

---

2. At least one other jurisdiction has adopted a similar approach and held that if a defendant has a clearly defined legal duty to supervise a plaintiff in order to prevent the type of harm suffered, the doctrine of assumption of risk will not bar recovery. *Lucas v. Fresno Unified Sch. Dist.,* 14 Cal.App.4th 866, 18 Cal.Rptr.2d 79, 83 (1993) (holding school district could not assert defense of assumption of risk against child injured in dirt clod fight at recess in light of the school district's statutory duty to supervise).

she decided to wait until the truck was moving to jump off. Cunningham did not deny that Conoly warned everyone to stand clear of the truck; she only testified that she did not remember such a warning. In response to the question whether Conoly knew she was still on the truck when he pulled away, Cunningham stated, "I knew that he didn't know we were on the truck."

Absent an enhanced duty to supervise and protect, the Department was entitled to summary judgment based upon Cunningham's assumption of risk because even when the evidence is viewed in the light most favorable to Cunningham, she knew of the condition, knew it was dangerous, appreciated the nature and extent of that danger, and she still chose to expose herself to that danger. *See Davenport*, 333 S.C. at 79, 508 S.E.2d at 569. Accordingly, we affirm the grant of summary judgment to the Department.

## II. Comparative Negligence

■ In granting summary judgment, the trial court also found: "Even if the facts constituting an assumption of risk were merged into and subsumed by, the doctrine of comparative negligence, I would still be constrained to view Cunningham's negligence as greater than the combined negligence of the defendants as a matter of law." Cunningham argues the trial court erred in making this finding because it failed to view the facts in the light most favorable to her and because a jury should have determined each party's degree of negligence. We agree as to Helping Hands.[3]

■ A plaintiff in a negligence action may recover damages if his or her own negligence is not greater than that of the defendant. *Nelson v. Concrete Supply Co.*, 303 S.C. 243, 399 S.E.2d 783 (1991). The assignment of respective degrees of negligence attributable to the plaintiff and the defendant is a question of fact for the jury if conflicting inferences may arise. *Brown v. Smalls*, 325 S.C. 547, 481 S.E.2d 444 (Ct.App. 1997); *see also Reiland v. Southland Equip. Servs., Inc.*, 330 S.C. 617, 639–40, 500 S.E.2d 145, 157 (Ct.App.1998) ("[A]ppor-

---

3. We need not reach this issue as to the Department because we find that the trial judge correctly granted the Department's motion for summary judgment based on Cunningham's assumption of risk.

tionment of negligence, which determines both whether a plaintiff is barred from recovery or can recover some of his damages and the proportion of damages to which he is entitled, is usually a function of the jury.").

Based on Helping Hands' duty to supervise Cunningham, and its staff's knowledge of her propensity to disobey authority, together with the circumstances surrounding Cunningham's accident and injury, we hold the trial court erred in finding Cunningham's negligence greater than the negligence of Helping Hands as a matter of law. The apportionment of negligence to each party should have been a question for the jury.

For the foregoing reasons, the order of the trial court is

**AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.**

CURETON and SHULER, JJ., concur.