575 S.E.2d 549

**Lora CUNNINGHAM, a minor By Guardian Ad Litem, Linda A. GRICE, Respondent,**

**v.**

**HELPING HANDS, INC. and City of Aiken Department of Public Safety, Defendants,**

**of whom Helping Hands, Inc., is Petitioner.**

No. 25575.

Supreme Court of South Carolina.

Heard Nov. 6, 2002.

Decided Jan. 13, 2003.

486

Thomas C. Salane, of Turner, Padget, Graham & Laney, P.A., of Columbia, for petitioner.

Jefferson D. Turnipseed and Ilene Stacey King, of Turnipseed & Associates, of Columbia, for respondent.

## ON WRIT OF CERTIORARI TO
## THE COURT OF APPEALS

Justice MOORE.

We granted certiorari to determine whether the Court of Appeals erred by reversing the trial court's decision granting Helping Hands, Inc.'s summary judgment motion. *Cunningham v. Helping Hands, Inc.*, 346 S.C. 253, 550 S.E.2d 872 (Ct.App.2001). We affirm as modified.

## FACTS

Helping Hands is a charitable organization that operates a children's shelter in Aiken, South Carolina. At the time of her accident, respondent, Lora Cunningham (Cunningham), was a fifteen-year-old resident of Helping Hands.

On September 8, 1996, Lieutenant Frank Conoly, a Department of Public Safety officer, brought a fire truck to Helping Hands so the children could see and climb onto the fire truck. When he arrived, two staff members of Helping Hands, John Heos and Lanita Battle, brought between six and ten teenagers to view the truck. The teenagers were allowed to climb on the truck and some, including Cunningham, were allowed to sit inside the truck. After approximately thirty minutes, Conoly asked the children to "stand clear" because he had to leave. Before leaving, he walked completely around the truck to ensure that all the children were standing clear.

As Conoly began to leave, Cunningham jumped onto the passenger side running board of the truck. Prior to her action, some other teenagers had also boarded the truck. As the truck drove away, Cunningham became frightened and either jumped or slipped from the truck, and fell under the rear wheels. She stated she got on the truck, knowing Conoly would be driving away and that she should not be on the

moving truck, because she wanted to ride for a short distance and then jump off.

Cunningham stated Conoly was the first person to assist her after she was injured. At the time she fell, she did not remember any of the Helping Hands staff being present, and the last time she remembered an adult, other than Conoly, being present was about ten to fifteen minutes prior to the accident. Conoly testified John Heos went inside shortly before he left.

Monica Brown, a teenager present at the time, testified that when Conoly began to leave, she told those on the truck to get off before they got hurt. She also stated that Heos knocked on the window from inside the building and told the children to get off the fire truck. At the time of the accident, Brown testified there were no staff members outside. Another teenager, Maurice Kelly, corroborated this fact. Brown testified that, previously, Battle had been outside while the children were at the fire truck. Kelly testified Heos and a female staff member periodically checked on them while they were outside with the truck.

Battle testified that when she went inside the building to use the restroom, Heos remained outside with the children. While answering a telephone call, Monica Brown ran in and said that Cunningham had been hit.

Heos testified that, initially, he, Battle, and possibly another staff member, were outside with the children; however, he did not stay outside the whole time because he had to assist a girl inside. He then watched the children from the window inside the building. He stated he did not know for sure if any staff members were outside after he went inside.

Heos testified that when Conoly began to leave he saw that two boys were hanging on the back of the truck. He jumped up to tell them to get off of the truck. From the window, he did not see Cunningham right away, but saw her hanging off the side of the truck as it made a circle.

Prior to the accident, Heos testified he had seen children hanging on moving vehicles and that he had seen Cunningham jump out in front of the moving fire truck previously that day.

At the time of Cunningham's placement at Helping Hands, Helping Hands knew that Cunningham had been evaluated for oppositional defiant disorder[1] and had to take Prozac and Ritalin. Battle testified that a few weeks before Cunningham's accident, Cunningham had overdosed on possibly Ritalin or aspirin and had to be supervised for a week following the overdose.

Regarding the responsibilities of Helping Hands' staff, both Heos and Battle testified that they were familiar with Helping Hands' personnel manual on policy and procedure. The manual indicated that, as part of the staff's responsibilities, the staff must ensure client safety and supervise clients at all times, and that staff are expected to take breaks only when it will not interfere with the daily routine of the children, supervision, or activities of the children.

As a result of her injuries from the accident, Cunningham brought a claim of negligence against Helping Hands. Before trial, Helping Hands moved for summary judgment on the ground that Cunningham's actions were the sole cause of her injuries. The trial court granted the motion, finding that Cunningham had assumed the risk of injury. The trial court noted that because Cunningham's action arose and accrued prior to this Court's opinion in *Davenport v. Cotton Hope Plantation Horizontal Prop. Regime*, 333 S.C. 71, 508 S.E.2d 565 (1998),[2] the case was governed by the common law principles of assumption of risk existing prior to *Davenport*. The trial court found Cunningham's assumption of the risk acted as a complete bar to recovery without regard to any comparative standard of fault.

The Court of Appeals reversed the trial court's decision granting Helping Hands' motion for summary judgment because a question of fact existed as to whether Cunningham

1. A clinical psychologist stated, by affidavit, that the essential feature of the disorder is a recurrent pattern of negativistic, defiant, disobedient, and hostile behavior towards authority figures.

2. In *Davenport*, we held the absolute defense of assumption of risk is inconsistent with the state's comparative negligence system. We further held the *Davenport* ruling would apply to all causes of action accruing after November 9, 1998, the date of the opinion. Because the accident in this case occurred on September 8, 1996, the law of assumption of risk as it existed *prior* to *Davenport* is the applicable law.

assumed the risk of her injury. The court concluded that, "[e]ven if there is evidence that Cunningham assumed the risk of her injury, that evidence is not sufficient to warrant judgment as a matter of law given Helping Hands' duty to supervise its charges."

## ISSUE

Whether Helping Hands was entitled to summary judgment based upon Cunningham's assumption of the risk under pre-*Davenport* common law?

## DISCUSSION

 Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Conner v. City of Forest Acres,* 348 S.C. 454, 560 S.E.2d 606 (2002); Rule 56(c), SCRCP. In determining whether any triable issues of fact exist for summary judgment purposes, the evidence and all the inferences that can be reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Id.* Moreover, since it is a drastic remedy, summary judgment should be cautiously invoked so that a litigant will not be improperly deprived of trial on disputed factual issues. *Id.*

 Secondary implied assumption of risk, as exists in the instant case, arises when the plaintiff knowingly encounters a risk created by the defendant's negligence. *Davenport,* 333 S.C. at 82, 508 S.E.2d at 571. "It is a true defense because it is asserted only after the plaintiff establishes a *prima facie* case of negligence against the defendant. Secondary implied assumption of the risk may involve either reasonable or unreasonable conduct on the part of the plaintiff." *Id.*

 Prior to the *Davenport* opinion, there were four requirements to establish the defense of assumption of risk: (1) plaintiff must have knowledge of the facts constituting a dangerous condition; (2) plaintiff must know the condition is dangerous; (3) plaintiff must appreciate the nature and extent of the danger; and (4) plaintiff must voluntarily expose him-

self to the danger. The doctrine is predicated on the factual situation of a defendant's acts alone creating the danger and causing the accident, with the plaintiff's act being that of voluntarily exposing himself to such an obvious danger with appreciation thereof which resulted in the injury. *Davenport,* 333 S.C. at 78–79, 508 S.E.2d at 569 (citation omitted). Assumption of risk may be implied from the plaintiff's conduct. *Id.*

We conclude the trial court improperly granted Helping Hands' motion for summary judgment because the evidence presented did not establish the defense of assumption of risk as a matter of law. No evidence was presented to establish that Cunningham appreciated the nature and extent of the danger of riding on the side of the fire truck. The evidence also does not show that Cunningham in fact knew the condition was dangerous.[3]

Therefore, because the evidence does not clearly establish the defense of assumption of risk, the trial court erred by granting the motion for summary judgment. *See Conner v. City of Forest Acres, supra* (summary judgment is drastic remedy that should be cautiously invoked so litigant will not be improperly deprived of trial on disputed factual issues); *Strange v. South Carolina Dep't of Highways and Pub. Transp.,* 307 S.C. 161, 414 S.E.2d 138 (1992) (assumption of risk is generally factual question to be determined by jury).

While the Court of Appeals reached the correct result by finding the summary judgment motion should not have been granted, we disagree with its analysis. The Court of Appeals, while finding the case was governed by the common law as it existed prior to the *Davenport* decision, held that the defense of assumption of risk was unavailable to Helping

---

3. We also find that the evidence presented did not establish Helping Hands was not negligent as a matter of law. According to the Helping Hands' personnel manual, the staff is required to ensure client safety and supervise the clients *at all times.* The manual further states that the staff is not allowed to take a break if it would interfere with the supervision of the children. The staff of Helping Hands may have failed to adequately supervise Cunningham on the day of the accident. When Conoly readied to leave, allegedly no staff members were present with the children. However, this determination of negligence is a question of fact for the jury.

Hands because it had an enhanced duty to supervise and protect Cunningham at all times.

The Court of Appeals reached this conclusion by extending the rule set out in *Bramlette v. Charter–Medical–Columbia,* 302 S.C. 68, 393 S.E.2d 914 (1990). In *Bramlette,* this Court held that where a duty exists to prevent a patient from committing suicide, the very suicide, which the defendant has the duty to prevent, cannot constitute assumption of the risk as a matter of law. *See also Hoeffner v. The Citadel,* 311 S.C. 361, 429 S.E.2d 190 (1993) (same) (hereinafter referred to as the *Bramlette* rule). The Court of Appeals found the *Bramlette* rule to be applicable in the instant case "because Helping Hands had a duty to supervise Cunningham at all times and its breach of that duty may have caused her injury." However, we have not extended the *Bramlette* rule beyond the factual situation of *Bramlette* and *Hoeffner* and we decline to extend it here.

The specific duty of a health professional to prevent the suicide of a person who is known by the health professional to be suicidal is very different from a group home's general duty to supervise a child in its care. Unlike the health professionals in *Bramlette* and *Hoeffner,* Helping Hands did not have a specific duty to prevent the very act by which Cunningham was injured, nor did it have specific notice that Cunningham was likely to commit such an act. Therefore, the defense of assumption of risk may apply in this case.

In conclusion, while the Court of Appeals improperly extended the *Bramlette* rule, we find the court reached the right result by reversing the trial court's decision granting Helping Hands' motion for summary judgment. Therefore, we affirm the decision of the Court of Appeals as modified. Further, we vacate the portion of the Court of Appeals' opinion concerning the issue of comparative negligence.[4]

**AFFIRMED AS MODIFIED.**

TOAL, C.J., WALLER, BURNETT and PLEICONES, JJ., concur.

---

4. The Court of Appeals unnecessarily addressed this issue by elevating the trial court's footnote on a hypothetical situation as a trial court "ruling."